# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DIVISION OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| DIAMOND RESORTS INTERNATIONAL, INC., a Delaware Corporation; DIAMOND RESORTS CORPORATION, a Maryland Corporation, DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, a Delaware Limited Liability Company, and DIAMOND RESORTS MANAGEMENT, INC., an Arizona Corporation**,** | **CASE NO.:** 9:18-cv-80311-RLR <br><br> Hon. Robin L. Rosenberg <br> Hon. Magistrate Judge Bruce E. Reinhart |
| Plaintiffs, | **CIVIL ACTION** |
| vs. | |
| US CONSUMER ATTORNEYS, P.A., a Florida Professional Corporation**,; HENRY PORTNER, ESQ. an individual; and ROBERT SUSSMAN, and individual,** | |
| Defendants. | |

## DEFENDANT, US CONSUMER ATTORNEYS, P.A. ANSWER TO THE PLAINTIFF'S AMNDED COMPLAINT, SEPARATE DEFENSES AND DEMAND FOR JURY TRIAL

Defendant U.S. Consumer Attorneys, P.A. ("USCA") hereby Answers the Plaintiff's

Amended Complaint, set forth their Separate Defenses and Demand a Trial by Jury.

1. Denied.

2. Admitted as to organization. Denied as to jurisdiction.

3. Admitted.

4. Denied.

5. Denied.

6. Admitted.

7.   Neither admitted nor denied as such information is particularly within the knowledge of the Plaintiff.

8.   Neither admitted nor denied as such information is particularly within the knowledge of the Plaintiff.

9.   Neither admitted nor denied as such information is particularly within the knowledge of the Plaintiff.

10. Neither admitted nor denied as such information is particularly within the knowledge of the Plaintiff.

11. Neither admitted nor denied as such information is particularly within the knowledge of the Plaintiff.

12. Denied. Strict proof is demanded.

13. Admitted.

14. Neither admitted nor denied as such information is particularly within the knowledge of the Plaintiff.

15. Denied. Strict proof is demanded.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Neither admitted nor denied as such information is particularly within the knowledge of the Plaintiff.

22. Denied.

23. Denied as to being a timeshare exit company. Admitted as to being a law firm.

24. Admitted as to being a law firm. Otherwise, denied as stated.

25. Denied.

26. Denied as stated.

27. Denied.

28. Denied. Strict proof is demanded.

29. Denied as stated.

30. Admitted.

31. Denied.

32. Denied.

33. Denied. Strict proof is demanded.

34. Denied as stated. Admits public filings but not as to the validity or enforcement rights therein.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied. Strict proof is demanded.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied as stated. Admitted as to purchase of AdWords®.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied as stated.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Defendant incorporates all prior responses.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Defendant incorporates all prior responses.

66. Denied as to a legal conclusion to which no response is required.

67. Denied.

68. Denied.

69. Denied.

70. Defendant incorporates all prior responses.

71. Denied as to a legal conclusion to which no response is required.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

76. Defendant incorporates all prior responses.

77. Denied as a legal conclusion to which no response is required.

78. Denied.

79. Neither admitted nor denied as such information is particularly within the knowledge of the Plaintiff.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

79. Defendant incorporates all prior responses.

80. Denied as a legal conclusion to which no response is required.

81. Denied. Said relationship, if any, is based upon misrepresentation, fraud, deceit and unfair, unreasonable and outrageous business practices by Plaintiffs.

82. Denied.

83. Denied.

84. Denied.

WHEREFORE, Defendant respectfully prays that this Honorable Court dismiss the Plaintiff's Complaint and award costs and counsel fees to the Defendant.

## SEPARATE DEFENSES

1. **THE PRIOR SETTLEMENT AGREEMENT HAS BEEN COMPLETELY IGNORED BY PLAINTIFFS. SAID SETTLEMENT AGREEMENT MANDATES THE DISMISSAL OF THE WITHIN COMPLAINT**
2. **DEFENDANT HEREIN ASSERTS THAT PLAINTIFF IN THE FILING OF ITS COMPLAINT, IS ATTEMPTING TO CIRCUMVENT THE TERMS OF THE SETTLEMENT AGREEMENT AND THUS IS IN DEFAULT THEREOF.**

On July 1, 2016 DIAMOND RESORTS CORPORATION, a Maryland Corporation, and its parents, affiliates, subsidiaries and assigns (collectively "Diamond") entered into a written and fully executed Confidential Settlement Agreement ("Settlement Agreement" or "Agreement").

From any reading of the Diamond Complaint there appears to be no reference to the Settlement Agreement and the Complaint appears strikingly in contrast to the provisions binding on the parties in this instance under said Agreement.

For a period of over twenty (20) months, the Agreement has remained in full force and effect and there simply remains "no uncured default after written notice" such that would trigger a default and needed access to this court.

The Agreement contains specific provisions for a period of thirty six (36) months following the execution of the Agreement (Agreement executed on July 1, 2016). Under Article III, entitled Non Solicitation, it was agreed that US CONSUMER ATTORNEYS, P.A. ("USCA") "shall not solicit Diamond Customers (meaning those persons and/or business entities owning one or more Diamond Vacation Ownership Interests) through the use of Diamond Customer lists, public records, and responses to Diamond Customer online posts (message boards, discussion groups, social media, etc.) not addressed specifically to USCA, *or through any other manner whatsoever…."* *(Emphasis added)*

6

> *"This shall not prohibit USCA from representing client who, on an unsolicited basis, contact USCA directly in any manner whatsoever."*

This Agreement goes on to provide the specific remedies in the case of default:

> *"Subsequent to the Effective Date of this Agreement, should Diamond learn of any USCA online solicitation that breaches this Section III, Diamond shall notify USCA and USCA shall have five business days to cure such breach; it is understood and agreed that this cure provision shall only apply to online solicitation."*

This Agreement further provides for liquidated damages of $ 25,000.00 per violation.

The parties further limited their litigation rights by providing in Paragraph 36 that they

> "*will forever refrain from instituting, prosecuting, maintain, or proceeding with a suit that arises out of, or is or may be, in whole or in part, based upon, related to, or connected with the subject matter of this Transfers and/or Diamond Vacation Ownership Interests and the releases as set forth above, except to enforce the terms and conditions of this Agreement, except as stated in Section II, Paragraph 11(c)."* [There is no 11(c). There is an 11.3]

It is to be further noted, that the parties exchanged Mutual Releases in Article V of the Agreement which provides a release

> *"from any and all claims, actions, causes of actions, damages, demands, payments, attorney's fees, refunds, reimbursements, rights, compensatory damages, statutory damages, costs, interests, liens, expenses, compensation, losses and judgments and any enforcement thereof, which Diamond had, or may have arising out of, or which were, or could have been asserted against USCA or the individually accepting owner. However, this release of claims shall not apply to any obligation expressly created or assumed under this Agreement."*

The Agreement further provides for the proper jurisdiction and venue in case that an issue may arise. It states:

> *"This Agreement shall be deemed to have been executed and delivered pursuant to, and the validity, construction, performance, application, and effect of this Agreement, and the rights and obligations of the Parties, hereto shall be construed and enforced in accordance with and governed by, the law of the State of Nevada."*

## 3.  THE PLAINTIFF'S COMPLAINT IS A SHOTGUN PLEADING

**The Complaint Violates Rule 8 Pleading Requirements.**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds on which it rests. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Shotgun pleadings violate Rule 8's short and plain statement requirement. *Vibe Micro, Inc. v. Shaba*, 878 F.3d 1291, 1294–95 (11th Cir. 2018). The Eleventh Circuit has little tolerance for shotgun pleadings.  *Id.* at 1295.

"A shotgun-style complaint is one that 'incorporates all of the general factual allegations by reference into each subsequent claim for relief.'" *Great Fla. Bank v. Countrywide Home Loans, Inc.*, 2011 WL 382588, at *2 (S.D. Fla. Feb. 3, 2011) (citing *Ferrell v. Durbin*, 311 F. App'x 253, 259 (11th Cir. 2009)). Shotgun pleadings "begin with a long list of general allegations" that are "incorporated by reference into each count of the complaint." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). Shotgun-style pleading is "disfavored as 'unhelpful and poorly drafted,' and the experience 'teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society losses confidence in the court's ability to administer justice.'" *Great Fla. Bank*, 2011 WL 382588, at *2 (citation omitted); *see also Vibe Micro*, 878 F.3d at 1295.

The Complaint in this case is 23 pages long and includes 84 numbered paragraphs. Plaintiffs incorporate the first 50 paragraphs into each successive count. This is a textbook example of the shotgun-style pleading the Eleventh Circuit frowns on. *See Great Fla. Bank*, 2011 WL 382588, at *2 (citing *Ferrell*, 311 F. App'x at 259); *see also Orange Lake Country Club, Inc. v. Reed Hein & Assoc., LLC*, No. 6:17-cv-01542-ORL-37-KRS (M.D. Fla., Nov. 29, 2017, Doc. 48).

The 41-page complaint recently dismissed in *Orange Lake v. Reed Hein* consisted of 126

numbered paragraphs, the first half of which set out general factual allegations that were incorporated into each of the six counts. The district court found this to be impermissible shotgun pleading. *Id.*  Similarly, here, the 50 paragraphs of the 84 paragraph Complaint sets out general factual allegations that are incorporated into each of the subsequent counts. This constitutes shotgun pleading that the Eleventh Circuit has admonished district courts to not allow. Indeed, the same attorneys who filed the shotgun pleading in *Orange Lake v. Reed Hein* drafted and filed the Complaint in this case.

### 4. <u>THE PUSH ADVERTISING OF THE DEFENDANT DOES NOT VIOLATE THE LANHAM ACT.</u>

Based upon the affidavit of counsel for the Plaintiff in their recent Sur Reply to the Defendant's Motion to Dismiss, it has become readily apparent that Plaintiff and its counsel has little understanding of how key-phrases work in Google Ads or is endeavoring to create a right where none exists. Plaintiffs' counsel asserts that because the paid Ad of the Defendant came up in their search for "Diamond Timeshare Resorts for Sale", that there has been an imputation of the mark. Not so. The paid advertisement of the Defendant came up because of the key words "Timeshare Resorts for Sale". See Exhibit "A" attached which is a search using the phrase "Timeshare Resorts for Sale." without the name Diamond being included.

1. <u>It is the case, that is any one (or more) of the several different words used in an organic search key-phrase can and may trigger the paid advertisement to show up.</u>
   a. Example, **"Sell my Diamond Timeshare"** will trigger/show any and all "ads" using the key word(s) and or key-phrases **"Sell my Timeshare"**, **"Sell Timeshare"** and even just simply **"Timeshare"** if the advertiser has just **"Timeshare"** as a keyword.
2. Putting the word (or as they claim "brand") "Diamond" in front of commonly used

keyword(s) and /or key-phrases does not give them claim of ownership over usage of the whole combined "key-phrase":

    a. **Owning** "Diamond Timeshares" **as a trademark does not give Plaintiff the rights to the keyword** "Timeshares" or the segregated word "Diamond";

    b. "Diamond Timeshare Sales" **does not give the Plaintiff the rights to the key-phrase** "Timeshare Sales";

    c. "Diamond Resorts" **does not give the Plaintiff the rights to the keyword** "Resorts";

    d. "Diamond Vacation Sales" **does not give the rights to the key-phrase** "Vacation Sales"; **and so on**.

    The Plaintiff significantly has no exclusivity or trademark rights as to the singular word "Diamond"

3. Another major point that the Plaintiff does not seem to comprehend is the fact that the Defendant is using a **"pull"** advertising technique rather than a **"push"** advertising technique.

    a. **Pull advertising** ("Pull" refers to the customer actively seeking out your product) refers to the fact that the viewer has to initiate the interaction **by performing a voluntary search** <u>with no influence from the advertiser (Defendant) at all</u>.

        i. **In other words**, Defendant is not actively looking or searching for them, Defendant is waiting for the searcher to find them by actively searching for organizations, groups and/or firms that offer services related to the ones that Defendant provides.

    b. **Push advertising** (Online/Internet examples of "push advertising" include email campaigns, pre-roll/auto play video ads and traditional banner ads) refers to the advertising technique whereby ads are delivered to the viewers computer screen based off of general parameters such as demographics, location, general viewer

interest etc.

      i. In other words, Push Advertising chases viewers, often even following them from device to device, in the active attempt to have the viewer click on their ad even if they have shown no previous organic interest in the subject matter, product and/or services provided.

4. Potential problems arise when purchasing keyword(s) for advertising when companies purchase their competitor's trademarks as keywords so that the purchasing company's advertisement displays when a consumer searches for the competitor's mark. Based upon the pleadings, including exhibits of the Plaintiff to date, there is no evidenced purchase of Plaintiff's marks by Defendant.

**5.  <u>PLAINTIFF CANNOT ESTABLISH A CONFUSION IN THE MARKETPLACE.</u>**

Even if Defendant did use their "mark", which is *categorically denied*, Plaintiff still has no claim against the Defendant because Plaintiff simply cannot prove a "confusion of marketplace". If the keyword(s) are "used in commerce", a Plaintiff in a keyword case must still prove that the use of the trademark in keyword advertising is likely to cause consumer confusion. While the exact "likelihood of confusion" factors may vary by jurisdiction, one thing has become clear; time and time again, the courts analyzing the likelihood of confusion in internet keyword advertising cases find that the purchasing of a competitor's trademark as a keyword ad trigger, does not lead to a likelihood of confusion.

Courts have recognized that the degree of care exercised by internet users is becoming more and more heightened as the novelty of the internet evaporates and online commerce becomes commonplace…Modern internet users are accustomed to such exploration by trial and error…The modern internet user's increasing level of experience with search sites decreases the likelihood that they would be confused by the advertisements at issue in these types of

cases.

Please see:

    a. *General Steel Domestic Sales, 2013 WL 1900562*

        i. The Court held no likelihood of confusion where Defendant used Plaintiff's trademark in the advertising copy of its Google AdWords advertisement and where Defendant purchased Plaintiff's trademark as a keyword ad trigger for sponsored links.

    b. *Infostream Grp., Inc. v. Avid Life Media Inc., No. CV 12-09315 DDP, 2013 WL 6018030 (C.D. Cal. Nov. 12, 2013)*

        i. The Court granted defendant's motion to dismiss plaintiff's trademark infringement claim, holding that defendant's purchase of plaintiff's trademark as a keyword ad trigger does not lead to customer confusion.

    c. *CollegeSource, Inc. v. AcademyOne, Inc., No. 10-3542, 2012 WL 5269213 (E.D. Pa. Oct. 25, 2012)*

        i. There was no likelihood of confusion found where the surrounding ad context, including separation of sponsored ad links and labeling of sponsored links, decreased any potential likelihood of confusion

    d. *Fair Isaac Corp. v. Experian Info. Sols. Inc., No. 06-4112 ADM/JSM, 2009 WL 4263699 (D. Minn. Nov. 25, 2009)*

        i. The Court held no trademark infringement due to a lack of likelihood of confusion, based on the finding that expert testimony was inadequate to support likelihood of confusion

    e. *Boston Duck Tours, LP v. Super Duck Tours, LLC, 527 F. Supp. 2d 205 (D. Mass. 2007)*

        i. The holding that triggered advertisement clearly identified the defendant as the source of the ad and thus no likelihood of confusion, and defendant's use

of plaintiff's trademark as a keyword ad trigger constituted fair, aggressive competition that did not result in customer confusion and was not prohibited by the Lanham Act)

f. *J.G. Wentworth, S.S.C. Ltd. P'ship, Civil Action No. 060597, 2007 WL 30115 (E.D. Pa. Jan. 4, 2007)*

   i. Finding defendants purchase of plaintiff's trademarks as keyword ad triggers for Google's AdWords program did not result in any actionable likelihood of confusion because of the separate and distinct nature of the links created on the search results page)

g. *GEICO v. Google, Inc., No. 1:04-cv-507, 2005 WL 1903128 (E.D. Va. Aug. 8, 2005)*

   i. The Court held no likelihood of confusion or initial interest confusion existed where Google used GEICO's trademark as a keyword ad trigger and the resulting sponsored link text did not include GEICO's trademark).

The U.S. District Court for the Southern District of New York reached a similar conclusion in *Allied Interstate LLC v. Kimmel & Silverman P.C., 2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013)* where the advertiser—a law firm soliciting clients who had allegedly been harmed by the plaintiff—referenced the trademark in its advertising copy and used it as a trigger. The court found that the defendant's ads were referencing plaintiff's trademark to identify the plaintiff and not in reference to the defendant's goods. Moreover, the court found that the defendant was not attempting to use the plaintiff's name to confuse consumers because the ads made clear that the businesses of the plaintiff and the defendant were not the same.

6. **THE SETTLEMENT AGREEMENT IS INCLUSIVE OF ALL INTERNET ADVERTISING.**

The Settlement Agreement is inclusive of all internet advertising. Though Plaintiff attempts to side step the entire Settlement Agreement it has not established, nor can it establish how the Defendants actions, as alleged give raise to an independent action

as set forth in the Plaintiff's Complaint.

7. <u>**THE PLAINTIFF IS LAWFULLY ENGAGED IN THE PRACTICE OF LAW AND ITS ACTIVITIES ARE WHOLLY CONSISTENT WITH PROFESSIONAL AND ETHICAL RULES GOVERNING THEIR PRACTICE.**</u>

**The Plaintiff attempts to portray the Defendant law firm as practicing and giving legal advice outside of the bounds of the law.** In their Complaint Plaintiff mischaracterize the Defendant's legal counsel role as something unlawful, but the high pressure sales tactics used by Plaintiff to lure unsophisticated consumers into signing lengthy and expensive timeshare contracts are common knowledge. In State of Arizona vs. Diamond, the Attorney General of the State of Arizona sued Diamond and asserted that Diamond had violated various statutory provisions and was guilty of fraud and misrepresentation. The Attorney General asserted that Diamond had engaged in 'high-pressure tactics" and to that end a settlement offering reimbursements to effected parties was ultimately entered into. In the introduction of the Plaintiffs' Complaint, Plaintiffs set forth its corporate structure thereafter asserting it is a "global leading in the hospitality and vacation ownership industries" (¶14 Complaint.), "strives to provide Diamond members and owners an increased sense of happiness and satisfaction in their lives" (¶ 15 Complaint.), is concerned with the "well-being of members and owners of Diamond timeshares interests. ( ¶15  Complaint.) It also castigates "a cottage industry …whereby unscrupulous companies mislead consumers… into disrupting or otherwise breaching the valid…contracts between consumers and timeshare companies." (¶20 Complaint.)  The glowing self-aggrandizement of Diamond differs materially with the unclean hands evidenced with the announcement by the Attorney General of the State of Arizona in its suit against Diamond in a court settlement agreement of $800,000.00 for allegations of Consumer Fraud Act Violations for misrepresentations related to unconscionable  annual increases in maintenance fees, fraudulent representations regarding resale and alleged buy-back programs, the lack of a timeshare membership resale market, the inability to rent timeshare vacations and similar wrongful statements and acts.   (*Press Release, Arizona Attorney General, 12/23/2016, Attorney General Brnovich Announces $800,000.00 settlement with Diamond Resorts*)

The same is true here.  At the time of purchase, timeshare purchasers (i.e., the "Diamond Owners") sign written purchase agreements in which they agree to become members of various timeshare owners' associations at the resort where they purchase their respective timeshare interests, and also agree to be responsible for their share of common expenses, assessments, and maintenance fees.  The Defendant in this case in their capacity as attorneys at law are assisting timeshare owners to cancel and/or terminate their timeshare contracts with timeshare companies such as Diamond on account of misrepresentation, timeshare fraud, improper, illegal and unethical high-pressure sales tactics, and other wrongdoings.

8.  **PLAINTIFF FAIL TO STATE A CLAIM FOR FALSE ADVERTISING UNDER THE LANHAM ACT.**

Plaintiff accuse USCA of false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). To state a claim for false advertising in violation of the Lanham Act, a plaintiff must plead and prove that (1) the defendant made a false or misleading statement of fact in a commercial advertisement about a product or service; (2) the statement deceived or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material because it is likely to influence a consumer's purchasing decision; (4) the statement is made in interstate commerce; and (5) the statement has injured or is likely to injure the plaintiff. *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015).

1.  Plaintiff Fail to Plausibly Allege that the Defendants Made False or Misleading Statements of Fact.

Plaintiff do not adequately identify the Defendants' purported false or misleading statements of fact that serve as the basis for their Lanham Act false advertising claims. Although Plaintiff repeatedly allege that the Defendants made "false and misleading" or "false or misleading" statements, they do not adequately identify the allegedly false or misleading

statements; they do not describe the statements in any detail; they do not provide copies or screenshots of the statements; and they do not include any disclaimers that are found on the USCA website

Plaintiff' selectively cherry-picked phrases from the website, without any citations to the full statements and any accompanying disclaimers is insufficient to satisfy Rule 8 pleading requirements because "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context," *Iqbal*, 556 U.S. at 686, which is lacking here. To determine if an advertisement is false or misleading, a court "must analyze the message conveyed in full context" and "must view the face of the statement in its entirety." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (internal quotation marks omitted). Because Plaintiff have failed to provide the relevant statements (or advertisements), the Court cannot determine if the statements (or advertisements) are false or misleading by looking only at the allegations in the Complaint. The excerpted phrases included in the Complaint, stripped of context, simply cannot be used as the basis of a false advertising claim. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002) ("'the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other'"). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. For these reasons, Plaintiff' allegations do not satisfy the plausible pleading standard set out in *Twombly* and *Iqbal* and thus fail to state a claim for false advertising that is plausible on its face. *See Turbon Int'l, Inc. v. Hewlett-Packard Co.*, 769 F. Supp. 2d 262 (S.D.N.Y. 2011) (dismissing plaintiff's claim for false advertising since the complaint's allegations did not cite defendants' advertisements and website statements as

referring to plaintiff and since it failed to allege in what manner the offending advertisements were false or impliedly false).

> 2. Defendants' Advertising Statements Constitute Puffery and other Non-Actionable Opinions Under the Lanham Act.

Even if Plaintiff plausibly alleged that the Defendants made false or misleading statements of fact, the Defendants alleged advertising statements constitute puffery and other non-actionable opinions under the Lanham Act, such as promises of future action and predictions of future events. To trigger liability under the Lanham Act, advertising must consist of false or misleading statements of fact. Puffery is "exaggerated advertising, blustering, and boasting," or "vague" and "general claim[s] of superiority." *Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292, 302 (4th Cir. 2017) (citations omitted); *see also BellSouth Advert. & Pub. Corp. v. Lambert Pub.*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999) (describing puffery as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely"), *aff'd sum. nom.* 207 F.3d 663 (11th Cir. 2000). It involves "outrageous generalized statements, not … specific claims, that are so exaggerated as to preclude reliance by consumers." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 24 (9th Cir. 1990).  Puffery is not actionable under the Lanham Act because it is not a factual statement and because "no reasonable person would rely on such superlatives." *Verisign*, 848 F.3d at 302–03. The Lanham Act "gives advertisers considerable leeway in drafting [advertisements and reflects a policy choice] … allowing the free market to hold advertisers and manufacturers accountable for their statements, ensuring vigorous competition and protecting legitimate commercial speech." *Intertape Polymer Corp. v. Inspired Technologies, Inc*., 725 F. Supp. 2d 1319, 1333 (M.D. Fla. 2010) (citing 5 J.T. McCarthy on Trademarks and Unfair Competition § 27:38 (4th ed. Current through June 2010)).  Courts may determine as a matter of law that a particular statement is puffery when ruling on a Rule 12(b)(6) motion to dismiss. *Cook,*

*Perkiss & Liehe*, 911 F.2d at 245 ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[,] and we can think of no sound reason why they should not do so.").

Like puffery, other non-actionable opinions involve predications that do not lend themselves to "empirical verification." *See Globel Tech LED, LLC v. Hilumz Int'l Corp.*, No. 2:15-cv-553-FTM-29CM, 2017 WL 588669, at *6 (M.D. Fla. Feb. 14, 2017).  Non-actionable opinions include predications about the future. *Id.* (finding statement that competitor was "going out of business" constituted non-verifiable prediction or opinion); *see also Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 883 (11th Cir. 1983) (holding promise of future action or prediction of future events is not a representation, there is no right to rely on it, and it is not false when made); *MDVIP, Inc. v. Beber*, 222 So. 3d 555, 561 (Fla. 4th DCA 2017) (finding promise to deliver exceptional product or service is a matter of opinion rather than fact).

Defendants' alleged advertising statements constitute puffery and other non-actionable opinions under the Lanham Act, such as promises of future action and predictions of future events. For example, "Get Out of Your Timeshare. Forever."  This is an exaggerated call to action for people who want to get out of their timeshare.  No reasonable person would believe that by simply contacting USCA, they will get out of their timeshare forever. Similarly, "100% satisfaction guaranteed" is "a classic example of commercial 'puffery' on which no reasonable person would rely."[1] *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 806 (W.D. Wis. 2006) (holding that any statement by job search firm that "[q]uality satisfaction [was] guaranteed" was not actionable under Wisconsin statute providing cause of action for fraudulent misrepresentation

---

[1] Nowhere on the USCA website do Defendants offer a "100% satisfaction guarantee" of "cancelling" timeshares. To the contrary, Defendants merely offer on the USCA website "a guarantee of satisfaction with its legal services."

in marketing; "'[q]uality satisfaction guaranteed' is a classic example of commercial 'puffery' on which no reasonable person would rely").  Likewise, the statement that USCA "goes the extra mile" is a "vague" and "general claim of superiority" on which no reasonable person would rely. *See Greater Houston Transp. Co. v. Uber Technologies, Inc.*, 155 F. Supp. 3d 670 (S.D. Tex. 2015) (holding defendant's statements that it offered the "SAFEST RIDE ON THE ROAD— Going the Distance to Put People First" and variations of it, as well as a statement that its "Background Checks … [CAN BE] TRUSTED," constituted "non-actionable puffery," since they were "not subject to empirical verification"); *Rodio v. Smith*, 123 N.J. 345, 352 (1991) (holding the statement "You're in good hands with Allstate" to constitute puffery and rejecting Plaintiff' argument that the statement amounted to a false representation of fact that Allstate was looking out for Plaintiff' best interest). The advertising statements cited in the Complaint constitute legitimate commercial speech. While the statements may involve some puffery, they are not misleading under the Lanham Act.

3.    Plaintiff Fail to Plausibly Allege Injury as a Result of any Alleged False or Misleading Statement.

Finally, Plaintiff' Lanham Act claims fail because they do not plausibly allege that Plaintiff have been, or likely will be, injured because of any alleged false or misleading statement.  Plaintiff' Complaint contains no factual allegations that they have been or are likely to be injured as a result of the Defendants' alleged false or misleading statements.  Nowhere in their Complaint do Plaintiff allege facts supporting their conclusory allegations of injury and this Court is not "bound to accept as trust" Plaintiff' "legal conclusion[s] couched as [ ] as factual allegation[s]." *Iqbal*, 556 U.S. at 678. A plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components,*

*Inc.*, 134 S. Ct. 1377, 1391 (2014) (stating proximate cause requirement presents question of "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits").

The "harm" Plaintiff claim to have suffered—injury to "Diamond's business reputation by leading consumers and others in the trade to believe [their] false statements of fact about [Diamond's] services and by falsely stating that Diamond is engaged in unlawful or illegal conduct" (*Id*. at ¶ 88)—does not have a "sufficiently close connection" to that advertising and could not have happened as a result of the allegedly false statements cited by Plaintiff. The fact is that timeshare owners are highly dissatisfied with the timeshare industry and with what they received versus what they were promised in the exhausting, high pressure sales pitches they are pushed to endure.[2] It should come as no surprise then that timeshare owners seek out avenues for which they may be afforded relief, including USCA thus, Plaintiff own actions are the direct cause of their harm.

As another district judge in the Middle District explained, "Misleading potential clients about [USCA's] success rate in getting timeshare owners out of their contracts does not harm the reputation of timeshare developers or lenders." *Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, 2018 WL 1535719, at *7 (M.D. Fla. Mar. 29, 2018) (dismissing Lanham Act false advertising count against law firm that guaranteed termination of timeshare contracts). And, as in *Orange Lake v. Castle Law*, "none of the cited advertising states that the Plaintiff are engaged in unlawful or illegal conduct," *id.*, despite Plaintiff conclusory allegations to the contrary. .

9. **COUNT V FOR TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS FAILS TO STATE CAUSES OF ACTION AGAINST THE DEFENDANT.**

To state a claim for tortious interference with an existing contract, a Plaintiff must allege the following elements: "(1) The existence of a contract, (2) The defendant's knowledge of the contract, (3) The defendant's intentional procurement of the contract's breach, (4) Absence of any justification or privilege, (5) Damages resulting from the breach." *Florida Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985). Plaintiff' claims for tortious interference with an existing contract fail because (1) Plaintiff fail to identify any specific contracts with any specific Diamond timeshare owners; and (2) The Defendants' alleged tortious interference is justified as legal advice and is privileged under Florida's litigation privilege.

1.  Plaintiff Fail to Identify the Existence of Any Specific Contracts.

Throughout the Complaint, Plaintiff fail to allege the existence of any specific contract, with any particular Diamond Owner, that the Defendants have allegedly tortiously interfered with. Rather, Plaintiff fails to identifying from that vast grouping which existing contracts, if any, are the subject of Plaintiff' tortious interference claim. The existence of a contract is an essential element of Plaintiff' claim, and thus Plaintiff's claims for tortious interference with existing contracts must fail. *See Swiss Watch Intern., Inc. v. Movado Group, Inc.*, 2001 WL 36270980, at *2 (S.D. Fla. June 21, 2001) (dismissing plaintiff's initial complaint, without prejudice, because plaintiff "failed to identify a specific contractual or business relationship interfered with by Movado.").

2.  The Defendants' Alleged Conduct Is Justified And Privileged As Legal Advice.

To state a claim for tortious interference with an existing contract, Plaintiff must allege that the Defendants lacked justification or privilege for their alleged conduct. "For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86

21

(Fla. 4th DCA 1999. Though Plaintiff take issue with the specific legal advice and legal counsel that the Defendants provide to their timeshare clients Plaintiff' cannot dispute that the Defendants are, in fact, providing legal services to their clients. "[P]rofessional counsel, being under a duty to advise his clients, is not liable for [tortious] interference." *Parker v. Gordon*, 442 So. 2d 273, 276 (Fla. 4th DCA 1983). The acts of interference alleged by Plaintiff are not demonstrative of an ulterior motive and are entirely consistent with legal advice provided to a client, by his lawyer, in relation to legal proceedings. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell v. United States Fire Ins. Co.,* 639 So. 2d 606, 608 (Fla. 1994) ("absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement, or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding."); *see Burton v. Salzberg*, 725 So. 2d 450, 451 (Fla. 3d DCA 1999) (stating that "[t]he privilege arises upon the doing of any act necessarily preliminary to judicial proceedings").

**10. DEFENDANT HAS PROPERLY AND ALLOWABY EXCERCISED ITS RIGHT TO FREE SPEECH.**

All undertakings and activities of the Defendant as alleged in the Plaintiff's Complaint were exercised under Article One of the United States Constitution and constitute the exercise of permitted free speech and were constitutionally protected thereunder.

**11. THE PLAINTIFF IS GUILTY OF UNCLEAN HANDS**

Plaintiff entire business model and methods of operation constitute an intention fraud and deceit upon its customers, to which Defendant as a law firm has the right and professional duty to represent its clients with zeal and to redress the wrong committed upon them.   As such, Defendant has a right, duty and privilege to represent its clients in the manner in which it practices.  Plaintiff

comes into this court with unclean hands attempting to bully the Defendant from representing consumer clients who purchased times shares from Plaintiff.

## DEMAND FOR JURY TRIAL

Defendant hereby demands a trial by trial of all counts of the Complaint so triable.


Dated: July 20, 2018


Respectfully submitted,

Henry N. Portner – SBN 0883050
*Attorney for Defendant*
**US Consumer Attorneys, P.A.**
6586 Hypoluxo Road, Suite 300
Lake Worth, Florida 33467
Tel.: (561) 400-0027
PortnerLitigation@hotmail.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via electronic mail through the courts e-Filing portal, ECF, on this 20th day of July 2018 on counsel or parties of record on the service list.

### <u>SERVICE LIST</u>

**Daniel Joseph Barsky**
*Shutts & Bowen LLP*
200 South Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Email: dbarsky@shutts.com

**Glennys Ortega Rubin**
*Shutts & Bowen*
300 South Orange Avenue
Suite 1600
Orlando, Florida 32801
Email: grubin@shutts.com

**Alfred Joseph Bennington, Jr.**
*Shutts & Bowen*
300 South Orange Avenue
Suite 1600
Orlando, Florida 32801
Email: bbennington@shutts.com

Dated: July 20, 2018

Respectfully submitted,

Henry N. Portner – SBN 0883050
*Attorney for Defendant*
**US Consumer Attorneys, P.A.**
6586 Hypoluxo Road, Suite 300
Lake Worth, Florida 33467
Tel.: (561) 400-0027
PortnerLitigation@hotmail.com