UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  18-80311-CIV-ROSENBERG/REINHART

DIAMOND RESORTS
INTERNATIONAL, INC. et al,

               Plaintiffs,

v.

US CONSUMER ATTORNEYS,
P.A. et al.,

               Defendants.

_____/

## AMENDED REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT (DE 209, 211)

This matter is before the Court on the Defendants' Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court referred this matter to the undersigned for a Report and Recommendation. DE 220. The undersigned has reviewed the Second Amended Complaint ("SAC") (DE 176), the Motions to Dismiss (DE 209, 211), and the Responses (DE 215, 216) and Replies (DE 217, 218) thereto. The matter is ripe for decision. For the reasons stated herein, the undersigned recommends that  the District Court deny the Motions to Dismiss.

## PROCEDURAL HISTORY

Plaintiffs Diamond Resorts International, Inc., Diamond Resorts Corporation, Diamond Resorts U.S. Collection Development, LLC, and Diamond Resorts Management, Inc. ("Diamond"), filed this action against Defendants, alleging the following claims: Violation of the Lanham Act—False Advertising (against the USCA Defendants) ("Count One"), Violation of the

1

Lanham Act—False Advertising (against the Newton Defendants) ("Count Two"), Violations of the Lanham Act—Contributory False Advertising (against USCA and the Newton Defendants) ("Count Three" and "Count Four," respectively), Violation of the Lanham Act—Contributory False Advertising (against DC Law) ("Count Five"), Tortious Interference with Contractual Relations (against the USCA Defendants) ("Count Six"), Tortious Interference with Contractual Relations (against the Newton Defendants and DC Law) ("Count Seven"), Civil Conspiracy (against all Defendants) ("Count Eight"), and Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (against all Defendants) ("Count Nine"). DC Law and the Newton Defendants filed the instant Motions to Dismiss, seeking dismissal of all claims brought against them for failure to plead with particularity the requisite elements of those claims.

The undersigned issued a Report and Recommendation on May 14, 2019, recommending denial of Defendants' Motions to Dismiss for failure to state a claim. DE 228. The DC Law and Newton Defendants filed objections, primarily on the grounds that the Report and Recommendation failed to address statutory standing under the Lanham Act, and erroneously concluded that the SAC stated plausible claims under Federal Rule of Civil Procedure 9(b). DEs 233, 234. The District Court re-referred the Motions to Dismiss to the undersigned, which are the subject of the instant Amended Report and Recommendation.

## **FACTS**

The following constitute the material facts alleged in the Complaint, which must be accepted as true at this stage of the proceedings. All paragraph citations (noted as "¶" or "¶¶") are references to the numbered paragraphs in the Second Amended Complaint ("SAC").

Diamond owns, operates, and manages, timeshare properties and resorts. ¶¶ 15-24. Individuals who purchase timeshare properties ("Timeshare Owners") from Diamond enter into Timeshare Contracts, which define the benefits and obligations of timeshare ownership, including

2

requiring payment to Diamond for annual assessments and maintenance fees. ¶¶ 19, 22. Timeshare Owners can end their contracts and "exit" their timeshares by purchasing Diamond's "Transitions Program" for a nominal fee ¶¶ 31, 42. Despite the existence of the Transitions Program, however, some Timeshare Owners hire timeshare exit companies, such as the Newton Defendants, to cancel their contracts for them.

The factual allegations pleaded to support the claims asserted in the SAC center on the misconduct conduct of a timeshare exit company—the Newton Defendants—and the law firms with which it conspires to deceive and defraud Diamond and its customers. The SAC alleges that the Newton Defendants solicit Timeshare Owners through "mass bulk mailing," telemarketing, and online advertisements. ¶ 121. These promotional materials represent that Defendants have a "method" or "process" to "cancel" Timeshare Contracts and "exit" or "transfer" timeshares. ¶ 35. The Newton Defendants work in combination with USCA and DC Law, referring them Timeshare Owners who enroll in the "exit" "process." ¶ 113. In exchange, the Newton Defendants receive referral fees. *Id*.

According to the SAC, the Newton Defendants' advertisements misrepresent the services USCA and DC Law can provide. ¶ 40. The advertisements are false and misleading, the SAC alleges, because Defendants are not parties to the Timeshare Contracts, and therefore have no authority to cancel, transfer, or terminate them. ¶ 35. The SAC alleges that DC Law is aware of the misleading advertisements, and acts in furtherance of the "scam", convincing timeshare owners to stop paying Diamond the fees to which it is entitled under the Timeshare Contracts. DC Law does not however, inform the Timeshare Owners that nonpayment will lead to default and foreclosure. ¶ 30. Instead, DC Law deceives Timeshare Owners into thinking the process is legitimate by sending boilerplate demand letters and misrepresenting to Timeshare Owners that

their contracts have been cancelled. ¶ 33.  These allegations of a fraudulent scheme perpetrated by USCA, DC Law, and the Newton Defendants are the bases for the instant claims.

<u>**LEGAL STANDARDS**</u>

1.  <u>**Motion to Dismiss**</u>

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.*, 534 U. S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)). On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 570. In addition, "courts may infer from factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp.*, 605 F. 3d 1283,

4

1290 (11th Cir. 2010) (citing *Iqbal*, 556 U. S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557).

When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U. S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc*., 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the Twombly standard.").

### 2. Federal Rule of Civil Procedure 9(b)

In addition to the usual notice pleading standard under Rule 8, Federal Rule of Civil Procedure 9(b) requires that allegations of fraud state "with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). Courts in this district routinely apply Rule 9(b) to claims alleging fraud, as well as to claims not requiring proof of fraud, but nonetheless supported by facts alleging fraud. *See Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1318 (S.D. Fla. 2013) (J. Moreno) ("Where a complaint contains averments of fraud or mistake . . . [Rule 9(b)] imposes a heightened pleading standard, requiring that the circumstances constituting fraud be stated with particularity."); *see also Llado-Carreno v. Guidant Corp*., No. 09-20971, 2011 WL 705403, at *5 (S.D. Fla. 2011) (J. Altonaga) (explaining that "[w]here, as here, the averments in

the complaint necessarily describe fraudulent conduct, Rule 9(b) applies to those averments"). "[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." *Simpson v. FVM Laboratories, Inc*., No. 09-61771, 2010 WL 1257714, at *4 (S.D. Fla. 2010) (J. Cohn).

A claim satisfies Rule 9(b)'s heightened pleading requirement if it alleges: "(1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendants' gain due to the alleged fraud." *Noveshen v. Bridgewater Assocs., LP*, 47 F. Supp. 3d 1367, 1374 (S.D. Fla. 2014) (J. Marra); *see also Cabreja*, 929 F. Supp. 2d at 1318 ("This particularity requirement is satisfied if the complaint alleges facts as to time, place, and substance of the defendants' alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them").  "These factors are not exclusive, however, and a plaintiff may satsify Rule 9(b)'s particularity requirements through alternative means." *Kuehne v. FSM Capital Mgmt, LLC*, No. 12-80880-CIV, 2013 WL 1814903, at *3 (S.D. Fla. Apr. 29, 2013) (J. Rosenbaum) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

Turning to the instant case, DC Law and the Newton Defendants argue that Rule 9(b) is applicable to all of Diamond's claims, and that the factual allegations pleaded in the SAC to support those claims do not meet Rule 9(b)'s heightened pleading standard.  The undersigned will now address the applicability of Rule 9(b) to each claim separately. The undersigned notes that the Eleventh Circuit Court of Appeals has not decided whether Rule 9(b) applies to Lanham Act claims that are based on fraud.  *Nutraceuticals Grp, Inc. v. BPI Sports LLC*, No. 15-80352, 2016 WL 4254257, at *2 (S.D. Fla. Feb. 2, 2016) (J. Bloom).  Recognizing the Eleventh Circuit's silence

on this issue, the District Court in *Nutraceuticals Group* declined to apply Rule 9(b) to the Lanham Act claim "[a]bsent instruction from this Court's governing Circuit or, at a minimum, persuasive guidance from its sister districts." *Id*.

The undersigned respectfully disagrees. The Federal Rules of Civil Procedure apply to "*all* civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). Rule 81 makes no exception for the Lanham Act, nor does the text of Rule 9(b). Where the text unambiguously resolves the question, the Court looks no further. *See, e.g., Reeves v. Astrue*, 526 F.3d 732, 734 (11th Cir. 2008). Therefore, the Court holds that the Lanham Act is not exempted from Rule 9(b). *Accord, e.g., Pestube Sys., Inc. v. HomeTeam Pest Def., LLC.*, No. CIV-05-2832-PHX-MHM, 2006 WL 1441014, at *5 (D. Ariz. May 24, 2006); *Volunteer Firemen's Ins. Servs. V. McNeil & Co.,* 221 F.R.D. 388, 393-94 (W.D.N.Y. 2004).

The next question is whether the Lanham Act/False Advertising claims allege fraud or mistake, thereby implicating Rule 9(b). The elements of common law fraud are: (1) a false statement of material fact; (2) Defendant's knowledge that the statement is false; (3) Defendant's intention that Plaintiffs rely on the statement; and (4) injury to Plaintiffs acting in reliance on the statement. *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 829 (S.D. Fla. 1996)(J. Moore). The Lanham Act claims incorporates all of the SAC's factual allegations, which include allegations that the Defendants made false and deceptive representations of material facts to timeshare owners, which those owners relied upon to their detriment, and that the Defendants obtained property (i.e. fees) from the owners as a result of the deception. That is paradigmatically an allegation of fraud. Therefore, Rule 9(b) applies to the Counts Two and Five.

Rule 9(b) also applies to Diamond's tortious interference claims. Where, as here, the theory of tortious interference with contract is based on the defendants allegedly defrauding third parties, Rule 9(b) applies. *See, e.g., Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1320 (S.D. Fla. 2013)(J. Moreno adopting order by J. Otazo-Reyes)(Rule 9(b) applies to tortious interference claim). Rule 9(b) also applies to Count IX, which alleges a violation of FDUTPA based on deceptive representations to the timeshare owners. *Ibrizzi v. Ocwen Loan Servicing, LLC,* 120 F. Supp. 3d 1368, 1381 (S.D. Fla. 2015) (J. Bloom) (dismissing deception-based FDUTPA claim for failing to comply with Rule 9(b)).

Diamond argues that even if Rule 9(b) applies, the SAC falls within the exception for "prolonged-multi-act schemes."  Diamond correctly notes that the Eleventh Circuit permits Rule 9(b)'s "particularity requirement [to] be relaxed for allegations of prolonged multi-act schemes. The relaxed standard permits a plaintiff to plead the overall nature of the fraud and then to allegewith particularity one or more illustrative instances of the fraud."  DE 69 at 4 (quoting and citing *Burgess v. Religious Technology Center, Inc.* 600 Fed. App'x 657, 662-63 (11th Cir. 2015)). Diamond also argues for a second exception to Rule 9(b).  It   states,   "The   pleading requirements of Rule 9 are also often relaxed where the plaintiff is a third party to the fraudulent transaction, with only secondhand knowledge of the fraudulent acts."  DE 69 at 4.  They cite *Wiand v. EFG Bank,* 2012 WL 750447 at *6 (M.D. Fla. Feb 8, 2012).  *Wiand* involved an action by a Receiver to set aside allegedly fraudulent transfers.  The court cited the legal principle that "Courts relax Rule 9(b)'s heightened pleading requirement for plaintiffs who are trustees or receivers who are 'third party outsiders to the fraudulent transactions' with only second-hand knowledge of the fraudulent acts."  *Id.*

Although Diamond is neither a receiver nor a trustee, the underlying premise of this latter exception to Rule 9(b) applies here.  That  premise is that a third party should be relieved of

8

pleading specific facts when it is implausible for that party to obtain the facts. Here, Diamond was not privy to the communications between the Defendants and the timeshare owners, so it has a limited ability to plead the specific representations made to particular owners. Nevertheless, the SAC alleges that the Defendants' actions caused and induced "the breaches of hundreds of Timeshare Contracts." ¶ 22. Diamond certainly knows the identities of the owners of these contracts. Based on the letters sent by DC Law to Diamond and attached as an exhibit to the SAC, Defendants also know the names of those customers who retained them to "exit" a Diamond timeshare. To the extent the breaches involve not timely paying fees required under the Timeshare Agreements, Diamond knows when the breaches occurred. Defendants also know the approximate date of the breaches based on the dated letters attached to the SAC. From the dated letters it received, Diamond can identify some owners who were represented by DC Law or by other law firms, though Diamond may not know whether these owners interacted with the Newton Defendants before being represented by a law firm.

On balance, the Court finds that the SAC contains sufficient facts to satisfy Rule 9(b)'s purpose of alerting defendants "to the 'precise misconduct with which they are charged.'" *USA Nutraceuticals Grp*., Inc., 2016 WL 4254257, at *2 (citation omitted); *accord In re Palm Beach Fin. Partners, L.P*., 517 B.R. 310, 322 (Bankr. S.D. Fla. 2013) (J. Hyman)("Thus, when a trustee brings a claim for fraud, Rule 9(b)'s particularity requirement is met 'if the person charged with fraud will have a reasonable opportunity to answer the complaint and has adequate information to frame a response ... or if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the all the allegations.'") (citation omitted). The Defendants know which customers/clients they represented in trying to terminate the Timeshare Contracts with Diamond. The SAC sufficiently identifies the alleged fraudulent misrepresentations and the kind of damages that allegedly

occurred, albeit not tied to any particular customer. Requiring Diamond to replead merely to identify a person who is almost certainly already-known to the Defendants does not advance the just, speedy, and inexpensive resolution of this matter. *See* Fed. R. Civ. P. 1. Instead, this Court will enter a separate discovery management order that requires Wyndham to provide the missing information on an expedited basis.

DC Law and the Newton Defendants also argue that SAC fails to satisfy Rule 9(b) because it impermissibly "lumps" Defendants together. When a complaint asserts claims against multiple defendants, it cannot merely "lump[ ] together all of the defendants in their allegations of fraud." *Brooks,* 116 F.3d at 1380-81. Instead, a complaint must contain specific allegations with respect to each defendant that are sufficient to "inform each defendant of his alleged participation in the fraud." *Id.*

The Eleventh Circuit Court of Appeals recently made clear in *Quality Auto Painting Center of Roselle, Inc. v. State Farm Indemnity Company*, 917 F.3d 1249 (11th Cir. 2019), that not all "lumping" is impermissible. In that case, the Eleventh Circuit reversed the District Court's decision to dismiss a tortious interference claim based on the very argument the DC Law and Newton Defendants raise here. In reversing, the Eleventh Circuit reasoned that each defendant had "fair notice," of its purported conduct despite the complaint's assertions against "the Defendants" generally, because the complaint stated that "[w]here the term 'Defendants' is used within this Complaint, 'Defendants' is intended and does mean each and every Defendant named in the caption above." Diamond's SAC includes the same disclaimer, defining "Defendants" as

meaning "all" of the defendants, including the USCA Defendants, the Newton Defendants, and DC Law. The SAC also makes clear that the "Newton Defendants" refers collectively to Newton Group, Newton ESA, IBD, and Newton Exit. To the extent the entities comprising the Newton Defendants contend that they are impermissibly lumped together in one group, that argument should also be rejected. The SAC includes sufficient allegations regarding the relatedness of the Newton Group entities for the Court to conclude that grouping them together is permissible. *See* ¶¶ 109-112.

**False Advertising**

In Count Two, Diamond asserts violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), against the Newton Defendants for false advertising. To succeed on a false advertising claim under Section 1125(a)(1)(B), a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false advertising. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

Defendants seek dismissal of the Lanham Act claims on the ground that Diamond lacks statutory standing, pursuant to *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014). In *Lexmark*, the Supreme Court held that the test for deciding whether a plaintiff has standing under the Lanham Act requires courts to determine whether the plaintiff's interests "fall within the zone of interests protected by the law invoked" and whether the injuries suffered by plaintiff were "proximately caused by violations of the statute." *Id*. at 1388, 1390.

11

"To come within the zone of interests in a suit for false advertising under [the Lanham Act], a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id*. at 1390.

Turning to the "zone of interests" prong, Defendants contend that the SAC fails to allege the type of injury that is protected by the Lanham Act. According to Defendants, the SAC must allege a loss of *timeshare* sales, but here the SAC alleges only breach of contract damages. This argument mischaracterizes the allegations that are pleaded in the SAC to support the Lanham Act claims. Paragraphs 19 and 22 of the SAC, for example, allege that "[a]s *part of the purchase of the timeshare interest,* owners are also required to pay maintenance fees and annual assessments." (emphasis added). The SAC also pleads that Defendants divert Timeshare Owners' financing payments owed to Diamond as part of a timeshare sale.

Even assuming Defendants are correct that financing payments, annual assessments, and maintenance fees are not sufficiently related to the purchase of a timeshare to constitute a "sale," Defendants' argument still fails. The SAC specifically alleges that Defendants' false and misleading advertisements cause Timeshare Owners to purchase Defendants' timeshare exit service *instead* of Diamond's Transitions® program. *See* ¶ 163 ("The Newton Defendants' deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Diamond or utilize the Transitions® Program, which is available to assist Diamond Owners who may wish to legitimately terminate their timeshare ownership with Diamond."). Defendants' position is that the existence of the Transitions® Program supports *their* argument because it shows that "consumers have the right to exit Diamond timeshare contracts for free or insignificant cost." DE 209 at 2. Defendants contend that because Timeshare Owners have a right to cancel their contracts, the result to Diamond is the same. The SAC's allegation that the Transitions® Program can be purchased for a "nominal" fee

is sufficient at this stage of the proceedings, where the Court must view the facts in the light most favorable to Diamond, to plead diversion of profit and loss of sales. *See Incarcerated Entertainment, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1233 (M.D. Fla. 2017) ("[Defendant] cites no authority to support its contention that Plaintiff must allege in 'detail' how its good will was damaged or how its sales declined. . . .[Defendant] may instead seek discovery on the nature and extent of Plaintiff's damages."). Moreover, Defendants' arguments require fact determinations.

The existence of the Transitions® program is significant for another reason—it makes plausible the SAC's allegation that Diamond and Defendants are competitors. The SAC alleges that both Diamond and Defendants sell a timeshare "exit" service—the difference being that Diamond's is legitimate. *See* ¶ 166 ("The Newton Defendants are operating as competitors to Diamond. Once a Diamond Owner enters into an agreement with a Newton Defendant, the sole purpose of that agreement is to cause that Diamond Owner to withdraw his or her business from Diamond, effectively converting that individual from a Diamond Owner to a customer of the Defendant."). In *Advisors Excel, LLC v. Scranton,* 2014 WL 12543802, *4-5 (S.D. Fla. Sept. 16, 2014) (J. Middlebrooks), the complaint alleged that defendants made disparaging statements against the plaintiff, but did not allege that defendants promoted their own competing services. Nevertheless, the court found "it is easy to conclude that [Defendant] Scranton's statements were designed to advance [Defendant] Advisors' Academy's business interests through influencing customers to buy Advisors' Academy's services, rather than Plaintiff's." *Id.* at *6. Accordingly, Diamond's allegations of harm are sufficient to show injury at this stage.

Turning to the proximate cause inquiry, Defendants argue that Diamond does not have standing because the SAC does not plead direct causation between the Defendants' advertisements

and Diamond's injury. Relying on the Merriam-Webster Dictionary's definition of "directly," Defendants read *Lexmark* to preclude liability where there is an "intervening agency or step" between a defendant's misconduct and the plaintiff's injury. However, "Supreme Court precedent makes crystal clear that an intervening step does not necessarily mean proximate cause has not been plausibly alleged." *City of Miami v. Wells Fargo & Co.*, 923 F.3d 1260, 1273 (11th Cir. 2019) (citing *Lexmark*, 572 U.S. at 118).

Defendants' reliance on *Wyndham Vacation Ownership, et al. v. Reed Hein & Associates, et al.*, No. 6:18-cv-02171-GAP-DCI, 2019 WL 2232241 (M.D. Fla. 2019) does not change the result. In that case, the court dismissed the false advertising claim *without prejudice* because the complaint failed to plead a direct connection between the advertising and the plaintiff's injury. It is not clear from the *Wyndham* Order whether the court dismissed the Lanham Act claim in that case based on a defective allegation, or an absent one. In any event, subsequent to the Middle District's *Wyndham* order, the Middle District held in *Hilton Resorts Corporation, LV Tower 52, LLC v. Sussman*, No. 6:19-cv-305-Orl-40DCI, 2019 WL 2717164 (M.D. Fla. June 28, 2019) that these same allegations did satisfy *Lexmark*. ("The Complaint avers Defendant's advertising statements caused owners to stop paying their financial obligations to Plaintiffs; these facts *easily* satisfy the injury requirement at this stage."). The *Hilton Resorts* case is consistent with the case law in the Middle District and this District; while *Wyndham* is not. *See Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1109 (M.D. Fla. Mar. 5, 2019) ("Defendants' contentions that none of the Subject Advertisements expressly direct viewers to stop making payments to Diamond or to initiate legal action and that no direct evidence exists that Defendants' Diamond Clients stopped payments or began arbitration based solely on the Subject Advertisements *miss the mark on causation*") (emphasis added); *see also  Wyndham Vacation Ownership, Inc. v. Totten*

14

*Franqui Davis & Burk, LLC*, No. 18-81055-CV-MIDDLEBROOKS, DE 188 at 4 (concluding that plaintiff had standing to bring Lanham Act claim, explaining that defendants' argument to the contrary "lacks merit" and did not "warrant discussion").

"The first element of the Lanham Act requires that the plaintiff show that the statements at issue were either (1) commercial claims that are literally false as a factual matter or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Id*. (internal quotations and citation omitted). "A plaintiff attempting to establish the second kind of falsehood, that an advertisement is literally true but misleading, must 'present evidence of deception' in the form of consumer surveys, market research, expert testimony, or other evidence." *Id*. This evidence is not required at the motion to dismiss stage, however. *See Hi-Tech Pharmaceuticals, Inc. v. HBS Int'l Corp*., 910 F.3d 1186, 1197 (11th Cir. 2018) (reversing dismissal of Lanham Act claim because "no part of the *Twombly-Iqbal* pleading standard requires a plaintiff to provide *evidence* for the factual allegations in a complaint before they are 'entitled to the assumption of truth' at the motion-to-dismiss stage").

The Newton Defendants contend that Count II fails to state a claim for false advertising for the following reasons: (1) that the statements included in the advertisements are neither false nor misleading; (2) the statements do not refer to "facts", and instead are opinion or "puffery;" and (3) the advertisements do not constitute "commercial advertising," as proscribed by the Lanham Act.

Turning to the Motion to Dismiss, the Newton Defendants dispute that the following statements pleaded in support of the False Advertising claim are either false or misleading:

> We are attempting to contact you because our records suggest that you are an owner who may be affected by new Timeshare Laws allowing developers to raise maintenance fees with no restriction. These new laws may also make it more difficult for owners such as yourself to get rid of your timeshare. Let us help. (DE 176 at ¶ 116, DE 176-20).

15

> The resorts are experts at getting people into timeshares (not out of them).  For that reason, it is dangerous to contact them for assistance in exiting your timeshare. They have no financial incentive in getting you out of your contract, and many representatives will use existing owners' vulnerability against them to attempt to sell more properties.

The Newton Defendants' arguments regarding the purported "truth" of these statements cannot be resolved at the motion to dismiss stage, and should therefore be rejected. *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1278 (11th Cir. 2015) (explaining that determining whether a statement is false or misleading is a "fact-intensive" inquiry); *see also North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, n. 12 (11th Cir. 2008) ("Whether a statement is literally false is a finding of fact, which is reviewed only for clear error.").  Other courts have held similarly.  *See Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-cv-1124, 2018 WL 3326443, at \*3 (M.D. Tenn. Jan. 24, 2018) (declining to consider defendants' arguments challenging the "falsity" of plaintiff's false advertising claim, reasoning that such argument "not only ignores Plaintiffs' allegations that Defendants lied to the timeshare owners, resulting in harm to Plaintiffs, but also is a factual argument and cannot be determined at this stage of the litigation").

Here, the SAC alleges that the Defendants used misleading statements and deceptive tactics, luring Timeshare Owners with "illusory" promises that they could relieve them of their timeshare obligations. The SAC includes a "representative advertisement," and pleads several statements by the Newton Defendants, alleging that they are false *or* misleading.  ¶¶ 36, 133 ("The advertisements listed in Paragraphs 36, 115-119, 121, 123-125, 127, 130, and 131, and Exhibits 20 and 21, together, will be referred to as the 'Newton Defendants' False and Misleading Advertisements.").  Diamond also attaches some of these statements as exhibits to the SAC.  ¶¶ 116, 118.  Accordingly, the SAC satisfies Rule 9(b) and the first element of Count Two by

identifying the statements the Newton Defendants are alleged to have made, and providing at least one representative example of those statements.

The SAC also describes in detail how the statements are false or misleading. *See* DE 176 at ¶¶ 116-119. Additionally, other courts have deemed similar statements to be sufficiently "deceptive" to withstand dismissal. *See e.g., Club Exploria, LLC v. Aaronson,* No. 6:18-cv-576-Orl-28DCI, 2019 WL 1297964, at *5 (M.D. Fla. Mar. 21, 2019) ("Plaintiffs sufficiently describe the statements made by Defendants on their website and explain why they are misleading and deceptive.  At this stage of the case, these allegations are sufficient."); *Westgate Resorts Ltd. V. U.S. Consumer Attorneys, P.A.*, No. 6:18-cv-359-Orl-31TBS, 2018 WL 4898947, at *4 (M.D. Fla. Oct. 9, 2018) ("Plaintiffs adequately convey the substance of the website and plead sufficient facts from which the Court can reasonably infer that Defendants' statements were false or misleading when considered in full context."); *Diamond Resorts v. Aaronson*, No. 6:17-cv-1394-Orl-37DCI, 2018 WL735627, at *3 (M.D. Fla. Jan. 26, 2018) ("According to the Complaint, the Advertising 'made material false and misleading statements,' which have deceived Plaintiffs' timeshare members into believing that Plaintiffs have engaged in unlawful activity and caused them to stop making  payments on  their Timeshare Contracts. These  allegations are  sufficient  to  survive dismissal.").

The Newton Defendants contend that the statement referencing "new Timeshare Laws" is not actionable because the Lanham Act does not proscribe statements about the "existence or nonexistence of a law." This argument is unconvincing, however, because it ignores the context of the entire advertisement, which refers to the "new laws" and includes the offer, "Let us help." Viewing the facts in the light most favorable to Diamond, the SAC states a plausible claim for

false advertising based on a false or misleading statement upon which a reasonable consumer could rely.

The Newton Defendants alternatively contend that that dismissal is appropriate because the statements are "opinion" or "puffery, and therefore not actionable statements of "fact." It is well established that factual statements are actionable under the Lanham Act, but statements of opinion are only actionable "if they imply a false factual basis for the opinion." *Advisors Excel, LLC v. Scranton*, No. 14-60558, 2014 WL 12543802, at *4 (S.D. Fla. Sept. 16, 2014) (J. Middlebrooks). "Thus, to be actionable, a statement must give consumers the impression that it describes actual facts about the plaintiff or the activities in which plaintiff participated." *Id*. Faced with similar allegations, the District Court in *Westgate Resorts, Ltd. V. Reed Hein & Associates*, concluded that statements in advertisements touting the defendant's timeshare cancellation services as "proven success,' a "100% satisfaction guarantee," and "top-rated by many timeshare owners. . ." could constitute "assertions of fact on which a reasonable consumer may rely." *Westgate Resorts, Ltd. v. Reed Hein & Assocs, LLC*, No. 6:18-cv-1088, 2018 WL 5279156, at *5 (M.D. Fla. Oct. 24, 2018) ("[T]he Court cannot conclude, as a matter of law, that the statements at issue constitute mere puffery or opinion").

The Newton Defendants also maintain that the false advertising claim should be dismissed because the SAC does not allege statements that relate to "goods or services." To be actionable under the Lanham Act, the speech at issue must be commercial in nature. *Millenium Labs., Inc. v. Universal Oral Fluid Labs, LLC*, 2012 WL 12906334, at *4 (M.D. Fla. Aug. 2, 2012). "Commercial speech encompasses not merely direct invitations to trade, but also *communications designed to advance business interests*." *VG Innovations, Inc. v. Minsurg Corp*., 2011 WL 1466181, at *5 (M.D. Fla. 2011) (quoting *Kleiner v. First National Bank of Atlanta*, 751 F.2d

1193, 1204, n. 22 (11th Cir. 1985) (emphasis added).  A false statement constitutes commercial advertising or promotion where the statement is (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. *VG Innovations, Inc.*, 2011 WL 1466181, at *5 (citing *Gordon & Breach Science Publishers, S.A. v. America Institute of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)).[1]

Here, the SAC alleges that the false or misleading advertisements are used to convince timeshare owners to hire the Newton Defendants for a timeshare cancellation service.  Viewing the facts in the light most favorable to Diamond, as is required at this stage, the advertisements relate to a "good" or "service."  The SAC also adequately pleads that the statements included in the Newton Defendants' advertisements influenced timeshare owners' purchasing decisions.  A plausible claim for false advertising has been alleged.

### Contributory False Advertising

The Second Amended Complaint asserts claims for contributory false advertising, in violation of 15 U.S.C. § 1125(a)(1), against DC Law and the Newton Defendants.  To prevail on a claim for contributory false advertising, a plaintiff must show that (1) "a third party in fact directly engaged in false advertising that injured the plaintiff," and (2) "the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it."  *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015).  The second, "contributory" or "participatory" element requires that a plaintiff prove "the

---

[1] *See Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1279 (S.D. Fla. 2008) (J. Gold) (noting that although the Eleventh Circuit has not articulated a test to determine whether misrepresentations are 'commercial advertising or promotion' within the meaning of the Lanham Act, district courts in this circuit and a majority of other circuits use the test set forth in *Gordon & Breach Sci. Publishers*).

defendant had the necessary state of mind—in other words that it 'intended to participate in' or actually knew about' the false advertising." *Id*. The Eleventh Circuit Court of Appeals has explained that the following considerations are relevant to the determination of "knowing or intentional participation": (1) "the nature and extent of the communication between the third party and the defendant regarding the false advertising;" (2) "whether or not the [defendant] explicitly or implicitly encouraged the false advertising;" (3) "whether the false advertising is serious and widespread, making it more likely that the defendant kn[ew] about it and condoned the acts;" and (4) "whether the defendant engaged in bad faith refusal to exercise a clear contractual power to halt the false advertising."

In moving for dismissal, DC Law argues that the SAC fails to state a plausible claim for contributory false advertising because it does not allege that DC Law encouraged or participated in the Newton Defendants' advertising. The undersigned disagrees. The following allegations pleaded in the SAC support the contributory advertising claim:

> ¶ 37—DC Law relies "upon the non-attorney, non-law firm defendants (specifically, the Newton Defendants) to publish such advertisements and then refer any 'clients' to DC Law."
>
> ¶ 39—"DC Law does not engage in any readily apparent advertising, but accepts the benefits of the false and/or misleading advertising engaged in by the Newton Defendants and, potentially, other third parties."
>
> ¶ 113—"The Newton Defendants use both USCA and DC Law as the recipient of its improper referrals, and improperly split fees with each of them such that both USCA and DC Law benefit from the Newton Defendants' false and/or misleading advertising."
>
> ¶ 126—"USCA and DC Law pay for these false and/or misleading advertising services either through direct payments and/or allowing the Newton Defendants to keep a portion (frequently a substantial portion) of the fee paid to the Newton Defendants by a Diamond Owner."
> DC Law's argument regarding the propriety of law firm referrals does not compel dismissal

at this stage. *See* DE 211 at 2 ("If Diamond's lawsuit is allowed to proceed, the implications reach

far beyond the alleged damages sought by Diamond, as Diamond certainly will use any success to deny timeshare owners' their right to counsel of their choice, eliminate Law Firm's constitutional right to petition, and silence Law Firm's right to free speech."). The contributory advertising claim encompasses conduct outside the scope of legal representation. As Paragraph 132 of the SAC avers, "Diamond does not contend that consumers are not permitted to retain legal counsel; rather, Diamond contends that Defendants' solicitation of consumers through false and misleading representation, done in connection with law firms, and the law firms subsequent acts done in furtherance of the scheme is improper." *See also* ¶ 125 ("The Newton Defendants 'timeshare attorney exit' essentially an illegal and improper attorney referral scheme.").

The undersigned also rejects DC Law's contention that dismissal is appropriate because the SAC does not allege that the advertisements affected a purchasing decision. "Even when a court finds that a defendant's ads are literally false, the plaintiff, to succeed on a claim of false advertising, must still 'establish that the defendant's deception is likely to influence the purchasing decision.'" *North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1226 (11th Cir. 2008) (quoting *Johnson & Johnson*, 299 F.3d at 1250)). Here, the SAC pleads that the advertisements deceived timeshare owners into purchasing and enrolling in Defendants' timeshare exit program.

**Tortious Interference**

Diamond alleges that by soliciting its customers and inducing them to breach their timeshare agreements, DC Law and the Newton Defendants tortiously interfered with Diamond's contracts. "The elements of a Florida tortious interference with contractual relations claim are: (i) the existence of a contract; (ii) the defendant's knowledge thereof; (iii) the defendant's intentional and unjustified procurement of a breach thereof; and (iv) damages." *Sun Life Assurance Co. of Canada v. Imperial Prem. Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018) (citing *Johnson Enters.*

*of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998)).  A claim for tortious interference need not plead with specificity the defendant's knowledge of an existing contract, even where Rule 9(b) applies.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

DC Law and the Newton Defendants move for dismissal of the tortious interference claim, claiming that as agents of the Diamond Owners, they cannot be liable for tortious interference because their actions were privileged.  Defendants also argue that dismissal is appropriate because the contracts purportedly interfered with were terminable-at-will, which precludes a claim for tortious interference.  Finally, both DC Law and the Newton Defendants argue that the tortious interference claim fails to satisfy Rule 9(b) because the SAC does not plead with specificity the identities of the customers or contractual provisions interfered with.  This level of detail is not required.  *See Bostwick Laboratories, Inc. v. Farley*, No. 14-60316, 2014 WL 12580032, at *4 (S.D. Fla. Aug. 1, 2014) (J. Scola) (plaintiff not required to specifically identify customers whose business was diverted, or with whom plaintiff had a contractual relationship, to satisfy Rule 9(b)).

Turning to the first argument, Defendants are generally correct that under Florida law, "a cause of action for tortious interference cannot exist against one who is himself a party to the contract."  *Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1336 (S.D Fla. 2001) (J. Gold); *see Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014) (J. Cohn) (explaining that "[u]nder Florida law, an interference is unjustified where the interfering defendant is 'a stranger to the business relationship'").  However, "[w]hile non-strangers generally have a 'privilege to interfere' with the business relationship to protect their own economic interests, they may still be liable for tortious interference if they did so in bad faith."  *Hamilton*, 6

F. Supp. 2d at 1320; *see Orange Lake Country Club, Inc. v. Reed Hein & Assocs.*, No. 6:17-cv-1542-Orl-31DCI, 2018 WL 5279135, at *4 (M.D. Fla. Oct. 24, 2018) (recognizing that "although an agent generally cannot be held liable for tortiously interfering with the contract of its principal, an agent's "privilege to interfere" is not absolute."). "[A]ctions alleging tortious interference for an improper purpose, as opposed to cases in which no assertion of impropriety is made, raise the question of whether the interfering party has gone beyond its limited and qualified privilege." *Burger King*, 161 F. Supp. 2d at 1337. *See* 985 F. Supp. 2d 1356 "Such a determination . . . is generally reserved for the trier of fact." *Id.* at 1338. Accordingly, the "privilege" defense is not dispositive at the motion to dismiss stage of the proceedings. *See Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1239 (S.D. Fla. 2015) (J. Bloom) ("Because the assertion of a privilege to interfere in an otherwise protected business relationship is an affirmative defense, this privilege argument . . . is unavailing on a motion to dismiss").

"Florida courts have found that if the plaintiff's existing contract is terminable at-will, a defendant's interference will be privileged *unless* the plaintiff alleges the defendant's motive is purely malicious and not coupled with any legitimate competitive economic interest." *Diversified Mgmt. Sols, Inc. v. Control Sys. Research, Inc.*, No. 15-81062, 2016 WL 4256916, at *8 (S.D. Fla. May 16, 2016) (J. Middlebrooks); *see also Cohen v. Storch*, No. 15-CIV-62726, 2016 WL 7469987, at * Accordingly, "[d]ismissal is appropriate, pursuant to the privilege of interference, if a plaintiff fails to 'adequately allege improper methods.'" *Diversified Mgmt. Sols, Inc.*, 2016 WL 4256916, at *8 (quoting *Duty Free Americas, Inc.*, 797 F.3d at 1280-81)). Here, because the SAC alleges that DC Law and the Newton Defendants used improper means to interfere, the tortious interference claim should not be dismissed, even if the contract is terminable at will.

Finally, the undersigned rejects the argument that Rule 9(b) requires Diamond to plead the identities of the customers and specific contractual provisions giving rise to the tortious interference claim. The Eleventh Circuit Court of Appeals recently rejected a similar argument advanced in support of dismissal in *Quality Auto Painting Center of Roselle, Inc.*, *supra,* explaining, "[w]e cannot agree with the district court that the instant five complaints' failure to name a plaintiff, to identify specific defendants, or to identify specific customers in the allegations relating to tortious interference deprived the Defendants of fair notice." *See also AstroTel, Inc.* 2012 WL 1581596 ("Although [plaintiff] does not plead specific customer contracts that were injured, that is not necessary at this point in the litigation."); *see also Farley,* 2014 WL 12580032, at *4 (rejecting argument that tortious interference claim was deficient because it did not identify customers by name, and explaining that "[t]hrough discovery, [defendant] can learn the identify of the companies [plaintiff] refers to in the [complaint], as well as the nature and type of business relationship those companies had with [plaintiff]").

To the extent DC Law and the Newton Defendants argue that the tortious interference claim fails to satisfy Rule 9(b) because it does not state the specific contractual provision allegedly breached, that argument is without merit. The District Court rejected this argument in *Cafaro v. Zois*, No. 15-CIV-80150, 2015 WL 3821753, at *12 (S.D. Fla. June 2, 2015) (J. Bloom), reasoning that "[a]ny reading of the Complaint—especially when considering the Agreement itself, which is incorporated by reference in the complaint, plainly includes [plaintiff's] allegation that [defendant] breached the Agreement for failing to convey for failing to convey to [plaintiff] marketable title to the Property on the closing Date, which is an express contractual duty under the Agreement." *See also Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1217 (S.D. Fla. 2015) (J. Bloom) ("Plaintiffs allege that [the] charges were not permitted under their mortgage agreements and that

[defendant's] actions, therefore, constitute a material breach"). Applying that logic to the instant case, and construing the facts in the light most favorable to Diamond, Defendants are on sufficient notice that the provision breached is the provision requiring payment of annual assessments and maintenance fees. *See* ¶ 42 ("Defendants do not disclose to the Diamond Owners the consequences of ceasing payments, or that their 'cancellation' and 'exit' will actually result in an unlawful breach of the Timeshare contracts due to non-payment, leading to a foreclosure or cancellation due to default of their timeshare interests."). Accordingly, plausible claims for tortious interference have been alleged.

**Florida Deceptive and Unfair Trade Practices Act (FDUTPA)**

The SAC alleges that all Defendants violated FDUTPA by publishing deceptive and misleading advertisements. FDUTPA declares the following actions unlawful: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "Given that Plaintiffs' FDUTPA claim sounds in fraud, the Court applies Rule 9(b)'s requirements." *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1226 (S.D. Fla. 2017) (J. Williams).

DC Law and the Newton Defendants move for dismissal of the FDUTPA claim, arguing that the SAC does not allege that the statements were made to consumers, and fails to satisfy Rule 9(b)'s heightened pleading standard. Both arguments are without merit. The plain language of FDUTPA makes clear that its application is not limited to "consumers." *See ADT LLC v. Vivint, Inc.*, No 17-cv-80432, 2017 WL 5640725, at *5 (S.D. Fla. Aug. 3, 2017) (J. Middlebrooks). Accordingly, Diamond has standing to bring this claim, and Rule 9(b) is satisfied because the underlying false advertising and tortious interference claims are sufficiently alleged.

**Civil Conspiracy**

"To maintain an action for civil conspiracy, the plaintiff must establish: '1) an agreement between two or more parties; 2) to do an unlawful act or to do a lawful act by unlawful means; 3) the doing of some overt act in pursuance of the conspiracy; and 4) damage to plaintiff as a result of the acts done under the conspiracy.'" *TIC Park Centre 9, LLC*, 2018 WL 4828436, at *2 (quoting *Raimi v. Furlong*, 702 So.2d 1272, 1284 (Fla. Dist. Ct. App. 1997)). "An actionable conspiracy requires an actionable underlying tort or wrong." *Bostwick*, 2014 WL 12580032, at *4. "A conspirator need not take part in the planning, inception, or successful conclusion of a conspiracy." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018) (J. Middlebrooks). "The conspirator need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Id.*

A claim for tortious interference "can constitute an unlawful act for purposes of pleading a civil conspiracy claim." *Id.* Finally, "[w]here, as here, Plaintiff's civil conspiracy claim is based on fraud, the heightened pleading standards in Rule 9(b) apply." *Id.* (citing *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *6 (S.D.Fla. Sept. 23, 2011) (J. Martinez).

Here, the SAC states plausible claims for false advertising, contributory false advertising, tortious interference, and accordingly, civil conspiracy. The "unlawful act" element is satisfied by the false advertising and tortious interference claims, which the undersigned has deemed meritorious. The SAC specifically pleads that "Defendants, acting both separately and in concert . . . have engaged in various scams to take advantage of Diamond Owners and cause Diamond millions of dollars in damages." ¶ 31. The SAC then describes the role of each defendant in furtherance of the scheme. *See* ¶ 128 ("Once referred to the law firm, the law firm furthers and assists in the fraudulent scheme by sending standard form letters on behalf of the Diamond Owner

to Diamond directing that Diamond cease communicating with the owner.").   These allegations are sufficient to state a plausible claim for civil conspiracy.

## REPORT AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the District Court DENY the Motions to Dismiss.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. If a party does not intend to object to this Report and Recommendation, they shall file a Notice to that effect within **FIVE (5) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** Chambers this 2nd day of July, 2019, at West Palm Beach in the Southern District of Florida.

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE