UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Case No. 9:18-cv-80311-ROSENBERG/REINHART

DIAMOND RESORTS INTERNATIONAL,
INC., et al.,

  Plaintiffs,

v.

US CONSUMER ATTORNEYS, P.A., et al.,

  Defendants.
_____/

## NEWTON DEFENDANTS' STATUS CONFERENCE REPORT

  The Newton Defendants submit this Status Conference Report in advance of the Court's Case Management Conference scheduled for 2 p.m. on August 5, 2019 (the "Status Conference"). This case is designated for trial in March 2020. Plaintiffs commenced this action in March 2018, and then in a second amended complaint ("SAC"), they joined the Newton Defendants in December 2018. In light of the Court's order granting leave to submit a Third Amended Complaint ("TAC") (DE 270), the Newton Defendants respectfully raise three topics for discussion during the Status Conference.

  ***First***, Plaintiffs did not simply reduce by two the number of plaintiffs from the SAC to the TAC.[1] Plaintiffs' TAC dropped three of the original four Diamond plaintiffs, and added a new plaintiff, Hawaii Collection Development, LLC ("Hawaii"). This maneuver has (at least) two

---

[1] This and the other issues herein were to be addressed via a Response to Plaintiffs' Motion for Leave to File the TAC; however, the Court's order granting that motion was issued prior to the time for filing the Response thereto.

1

important effects: (a) it requires the parties to start anew in regards to discovery concerning Hawaii; and (b) it requires the parties (or at least the Newton Defendants) to develop a new strategy in relation to approaching discovery in this case, as former parties and employees thereof may now need to be subpoenaed rather than deposed by way of notice of deposition, and an investigation into Hawaii will now have to commence. In addition, Plaintiffs may seek to argue that discovery obtained regarding the three Diamond plaintiffs it dropped is no longer relevant.

As for Hawaii, Plaintiffs' Motion for Leave to File the TAC omitted that this *brand new* plaintiff was being joined to this action. The TAC alleges little about Hawaii or how it is related to this action as only three paragraphs in the entire complaint identify it by name, none of which refer to any alleged false or misleading advertisements by any Newton Defendant published regarding Hawaii. *See* TAC at ¶¶ 2, 18-19 (the only paragraphs in the pleadings that refer Hawaii by name). It does not appear that this brand new plaintiff, which now for the first time asserts claims against the Newton Defendants, would benefit from any activity in this action. In that regard, the Court, in its Omnibus Order adopting the Amended Recommendation and Report, cautioned that this order is the law of case going forward in relation to the TAC. Putting aside the issue of whether the "law of the case" doctrine applies only to appellate decisions,[2] because Hawaii, a new plaintiff, joined subsequent to the Court's order, the parties would benefit from the Court's guidance on whether, under applicable law, Hawaii should benefit from prior rulings having nothing to do with it. Additionally, the joinder of this new plaintiff, now, significantly impacts the Court's Scheduling Order and the proceedings going forward. Consideration of these

---

[2] *Compare* DE 270:6 (stating that the Omnibus Order represents the law of the case) *with Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) ("The [law of the case] doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication ***in a prior appeal***. Law of the case binds not only the trial court but this court as well." (emphasis added; internal citation omitted)).

matters during the Status Conference should assist the Court and all parties move forward more efficiently.

*Second*, in relation to the Lanham Act claim, the Diamond plaintiffs alleged that they were *competitors* with the Newton Defendants in the exit business. The Magistrate Judge relied upon those allegations in concluding that the plaintiffs' Lanham Act claim was sufficiently pled. DE 258 at pp. 12-13.[3] Suddenly, the Diamond plaintiffs had a change of heart—they immediately sought to file the TAC as a means to delete, and did delete, all of their prior allegations that they compete with the Newton Defendants. They deleted these "competition allegations" *only after two rounds* of a motion to dismiss, and two reports issued by the Magistrate Judge; and once the Court relied on those allegations to the Diamond plaintiffs' benefit, the plaintiffs systematically removed them from the TAC. It appears that this issue may have an impact on the Magistrate Judge's decision because of his reliance on those allegations in arriving at his decision. *See* **Exhibit A** attached hereto for a true and correct copy of the comparison of the SAC and the TAC.

The Diamond plaintiffs have placed into question the ruling on the motion to dismiss because, by way of the TAC, the Diamond plaintiffs substantially and materially redesigned portions of their case, not only by adding a new plaintiff and dropping three original plaintiffs, but by conceding that the Amended Report and Recommendation was, at least in part, based on plaintiffs' allegation of competition, which now appears to have been a sham from the beginning.

---

[3] *Id.* at p. 13 ("The existence of the Transitions® program is significant for another reason—it makes plausible the SAC's allegation that Diamond and Defendants are competitors. The SAC alleges that both Diamond and Defendants sell a timeshare 'exit' service—the difference being that Diamond's is legitimate. *See* ¶ 166 ('The Newton Defendants are operating as competitors to Diamond. Once a Diamond Owner enters into an agreement with a Newton Defendant, the sole purpose of that agreement is to cause that Diamond Owner to withdraw his or her business from Diamond, effectively converting that individual from a Diamond Owner to a customer of the Defendant.').").

3

As mentioned, the TAC dropped three original Diamond plaintiffs, and the dismissal of parties would ordinarily be done by filing voluntary dismissals of those parties. It does not appear that the Diamond plaintiffs intend to file dismissals of those parties; however, the record in this case should not be obscured by the Diamond plaintiffs' attempt to avoid creating a record of the nature of the departure of those three original Diamond plaintiffs.

All parties would benefit from a discussion of these matters during the Status Conference.

***Third***, the TAC continues to rely on an exhibit—a Consumer Guide by Newton, DE 272-8—that fully discloses to timeshare owners the adverse effect of not making payments. The Consumer Guide reads in relevant part:

> Generally, ***failing to pay your timeshare-related fees could result in collection efforts by your resort***, ***which could damage your credit*** for years to come. You ***could receive interest and penalties*** on what you owe, and then the collection calls can start. ***If you still refuse to pay your bills, the resort may do anything to collect, including (in worse case scenarios) putting a lien on your personal property***. Ultimately, the ***resort could foreclose*** on the timeshare — severely ***damaging your credit*** and impacting your financial future.

DE 176-21 at p. 13 (emphases added). This point is raised for discussion at the Status Conference because the foregoing has not been squarely addressed in prior motion practice, but it will have an impact going forward at least in relation to the Lanham Act claim, and apparently it has an impact on the TAC because the language of the exhibit contradicts the Diamond plaintiffs' allegation that the Newton Defendants harm timeshare owners by failing to disclose potential adverse effects of not making payments on timeshare contracts, and because that same exhibits cautions owners not to stop making payments until and unless they are advised by an attorney to do so.

In conclusion, the foregoing issues are raised for discussion purposes at the August 5th Status Conference, and the Court's input on these issues will provide useful insights to all parties and aid in the efficient management of this action going forward.

Dated: August 1, 2019

Respectfully submitted,

**KOZYAK TROPIN & THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
Tel.: (305) 372-1800
Fax.: (305) 372-3508

By: */s/ Javier A. Lopez*
　　Javier A. Lopez
　　Fla. Bar No. 016727
　　jal@kttlaw.com
　　Dwayne A. Robinson
　　Fla. Bar No. 0099976
　　drobinson@kttlaw.com

-and-

Jeffrey Wittenberg
**WITTENBERG LAW APC**
jeffrey@wittenberglawyers.com
401 Wilshire Boulevard, Floor 12
Santa Monica, California 90401
Phone: (310) 295-2010
(Pro Hac Vice)

-and-

Ryan J. Clarkson
**CLARKSON LAW FIRM, P.C.**
rclarkson@clarksonlawfirm.com
9255 Sunset Boulevard, Suite 804
Los Angeles, California 90069
Phone: (213) 788-4050
Fax: (213) 788-4070
(Pro Hac Vice)

Attorneys for Defendants NEWTON GROUP TRANSFERS, LLC, THE NEWTON GROUP ESA, LLC, INTERVAL BROKER DIRECT, LLC, and NEWTON GROUP EXIT, LLC