## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO: 9:18-CV-80311-BER

DIAMOND RESORTS U.S. COLLECTION
DEVELOPMENT, LLC, a Delaware limited
liability company; and DIAMOND RESORTS
HAWAII COLLECTION DEVELOPMENT,
LLC, a Delaware limited liability company,

      Plaintiffs,

v.

U.S. CONSUMER ATTORNEYS, P.A., *et. al.*,

      Defendants.

_____/

## DEFENDANTS', NEWTON GROUP TRANSFERS, LLC, THE NEWTON GROUP, ESA LLC, INTERVAL BROKER DIRECT, LLC, AND NEWTON GROUP EXIT, LCC, MOTION FOR SUMMARY JUDGMENT AND SUPPORTING <u>MEMORANDUM OF LAW</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Defendants, Newton Group Transfers, LLC ("NGT"); The Newton Group, ESA LLC ("Newton ESA"); Interval Broker Direct, LLC ("IBD"); Newton Group Exit, LLC ("NGE") (NGT, Newton ESA, IBD, and NGE are collectively referred to as the "Newton Defendants"), hereby move for Summary Judgment (the "Motion") as described below.

## I.     SUMMARY OF THE ARGUMENT

This case stems from Plaintiffs' strategic anti-consumer efforts to chill timeshare owners' right to exit their timeshare agreements. Plaintiff Diamond operates in the timeshare development and sales industry, an industry notorious for its high-pressure, unconscionable and fraudulent sales tactics by which many vulnerable consumers are saddled with timeshare contracts they cannot afford and wish they never had. The Newton Defendants are a combination of timeshare exit companies that aid timeshare owners exit their timeshare agreements successfully and legally. In their efforts to chill timeshare owner's rights, Plaintiffs brings three claims against the Newton Defendants; (1) violation of the Lanham Act, (2) tortious interference with contractual relations, and (3) civil conspiracy. If Plaintiffs are permitted to succeed, timeshare owners will be denied their right to exit their timeshare agreements and will be forced to continue in their oppressive and unconscionable agreements with Plaintiffs. The Newton Defendants' Motion for Summary Judgment should be granted in its entirety for the following reasons:

1.     Plaintiffs lack standing to bring a Lanham Act Claim against the Newton Defendants because they cannot satisfy the heightened proximate cause requirement and cannot prove injury to reputation or sales.

2.     Plaintiffs attempt to obtain disgorgement under the Lanham Act fails as Plaintiffs cannot show that the alleged false advertisement actually misled the timeshare owners and that it was the alleged false advertisement that caused injury to Plaintiffs.

3.     The Newton Defendants are entitled to summary judgment on Plaintiffs' tortious interference claim because they lack any evidence to support that the alleged interference by the Newton Defendants was direct and intentional.

4.     The Newton Defendants are entitled to summary judgment on Plaintiffs' civil conspiracy claim because Plaintiffs have failed to prove their tortious interference claim.

5.     The Newton Defendants are entitled to summary judgment on their twentieth affirmative defense of justification/privilege because the Newton Defendants' actions are justified/privilege to assist owners to avoid their unwanted and unaffordable timeshare obligations.

Each of these reasons, justifies granting summary judgment in favor of the Newton Defendants and will be discussed in greater detail below.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

## II.   STATEMENT OF MATERIAL FACTS
### A.   <u>The Newton Defendants</u>

The Newton Defendants are a combination of timeshare exit companies that aid timeshare owners exit their timeshare agreements successfully and legally. SOF[1], ¶¶ 1, 6, 14, 19. The companies each have a purpose in the Newton Defendants' process to aid timeshare owners exit their timeshare contracts. *Id*., ¶¶ 10-13. NGT used to work directly with Diamond to aid clients exit their timeshares until the end of 2016 when Diamond ceased the relationship. *Id*., ¶ 3.NGE is also a timeshare exit company that aids people out of their timeshare contracts. *Id*, ¶ 6. The main difference between NGT and NGE is that when a consumer hired NGT, NGT took on financial responsibility of the timeshare owner's contract. *Id*., ¶ 7.Newton ESA is a business to business service company that provides services to NGT, NGE, IBD and DC Capital Law Firm, LLP ("DC Capital"). SOF, ¶ 14. Some of the services provided by Newton ESA include customer relationship management, human resources, and administrative services. *Id*., ¶ 16. IBD's purpose was to assist timeshare owners in selling their timeshare interest by connecting the owners to potential buyers. *Id*., ¶ 18. IBD ceased operation in November 2017. *Id*., ¶ 20.

### B.   <u>The Newton Process</u>

A timeshare owner looking to exit his/her timeshare contract will normally retain the Newton Group after meeting with a Consumer Advisor. SOF, ¶ 11. The Consumer Advisor meets with potential customers that are looking to exit their timeshares and explains to them the NGE's model. *Id*. The Consumer Advisor explains to the potential customer NGE's contract and what the contract allows if the consumer signs up. *Id*. Normally, as part of the sign-up process with NGE, NGE requests the customer's timeshare contract for review, a questionnaire, and payment. *Id*.

NGE provides two services to timeshare owners looking to exit their timeshare contracts: a transfer services where NGE takes financial responsibility of the timeshare obligation and an attorney solution. SOF, ¶¶ 10, 11. Under the attorney solution, NGE will retain a law firm on behalf of the client and that law firm will provide that client with research, investigate the timeshare owner's options to exit their timeshare and provide the timeshare owner with an option.

---

[1] References to "SOF" are to the Newton Defendants and Defendant DC Capital Joint Statement of Undisputed Material Facts in Support of their respective Motions for Summary Judgments, filed concurrently.

*Id.*, ¶ 11. NGE has retained DC Capital to perform legal services for clients. *Id*. Once DC Capital is involved, DC Capital communicates and works directly with timeshare owners. *Id*.

## III.   LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of establishing the nonexistence of a triable fact issue." *Cont'l Cas. Co. v. Wendt*, 205 F.3d 1258, 1261 (11th Cir. 2000) (citation omitted). "Once this initial burden is met, 'the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf.'" *Rayo v. BP Expl. & Prod. Inc.*, No. 19-21263-CIV, 2019 WL 7376775, at \*1 (S.D. Fla. Nov. 15, 2019) (citation omitted).

The nonmoving party must present evidence *beyond the pleadings* showing that a reasonable jury could find in its favor. *See, e.g., Cordobav. Dillard's, Inc*., 419 F.3d 1169, 1188 (11th Cir. 2005). Speculation does not create a genuine issue of fact. *Id*. Further, "Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Johnson v. Bd. of Regents of Univ. of Ga*., 263 F.3d 1234, 1243 (11th Cir. 2001).

## IV.   PLAINTIFFS LACK STANDING TO BRING A LANHAM ACT CLAIM AGAINST THE NEWTON DEFENDANTS (COUNT II)

Plaintiffs allege that the Newton Defendants violated §1125(A)(1) of the Lanham Act by engaging in  false and misleading advertising regarding their products and services.[2]  *See* ECF No. 272, ¶¶ 91-102.  To prevail on a false advertising claim under the Lanham Act, a plaintiff must "demonstrate that: (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decisions; (4) the misrepresented service affects interstate commerce; and

---

[2] Newton Defendants are also entitled to summary judgment on Plaintiffs' FDUPTA claim as this claim shares the same analysis under the Lanham Act. *See Suntree Tech., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) ("[T]he legal standards we apply to [the FDUPTA] claim are the same as those we have applied under section 43(a) of the Lanham Act."). For brevity, Newton Defendants will discuss only the Lanham Act claim (Count II) but also move for summary on the FDUPTA claim (Count VIII) as these two counts share the same analysis.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

(5) it has been, or likely will be, injured as a result of the false or misleading statement." *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order*, 702 F.3d 1279, 1294 (11th Cir. 2012)(internal citations omitted).

### a.  Plaintiffs' Lack Standing To Bring A Claim Under the Lanham Act

**Generally**. The cause of action for false advertising under 15 U.S.C. §1125(a)(1) of the Lanham Act is intended to "protect persons engaged in commerce within the control of Congress against unfair competition"—that is, against "injuries to business reputation and present and future sales." *Lexmark Intern., Inc. v. Static Control Components, Inc*., 572 U.S. 118, 129 (2014). The Lanham Act "extends *only* to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked." *Id*., (emphasis added).

However, the Lanham Act "forecloses suit *only* when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Id*., at 130. To succeed on a Lanham Act claim, the plaintiff must ultimately prove "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id*., at 140. Notably, the Supreme Court noted in *Lexmark*, a plaintiff suing under §1125(a) ***must*** show "economic or reputational injury ***flowing directly*** from the deception wrought by the defendant's advertising; and that [] occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133; *see also Orange Lake Country Club, Inc. v. Reed Hein & Associates, LLC*, 2019 WL 7423517, at *14 (M.D. Fla. Oct. 4, 2019)(noting that "[t]o succeed on a Lanham Act claim, the alleged injury must have 'a sufficiently close connection to the conduct the statute prohibits'")(internal citations omitted).

**Plaintiffs Have Abandoned Any Claim For Injury to Reputation Or Sales**. Here, Plaintiffs contend that the Newton Defendants "cause[d] harm to Plaintiffs' sale and reputation" to bring their Lanham Act claim. ECF No. 272, ¶ 56. However, Plaintiffs have expressly abandoned their claims to reputational damages. ECF No. 400.

> PAPERLESS ORDER vacating the Court's March 3, 2020 order requiring Plaintiffs' production of profit and loss statements to the Newton Defendants. The order is vacated in light of Plaintiffs' representation to the Court at the July 1, 2020 hearing that they are

> *no longer seeking reputational damages or damages for loss of goodwill in this case.*

*Id*. (emphasis added). Likewise, Plaintiffs have implicitly abandoned any injury to sales by failing to provide any evidence to support such injury. In order to show an injury to sales, plaintiffs must establish their "ability to compete" in the marketplace has been diminished. *See Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1168 (11th Cir. 2007) (observing the anomalous decrease in sales are "the type of hard the Lanham Act was intended to redress"). Moreover, the plaintiff *must show* that the defendant's alleged conduct caused plaintiff's sales to decline. *See, e.g., Synygy, Inc. v. ZS Assocs.*, 110 F. Supp. 3d 602, 611 (E.D. Pa. 2015); *Tire Kingdom v. Morgan Tire & Auto*, 915 F. Supp. 360, 364 (S.D. Fla. 1996). There is no record evidence creating any genuine issue that Plaintiffs have experienced a loss in sales as contemplated by the Lanham Act. Plaintiffs' corporate representatives, Grace Bocken and Brad Harris, failed to provide any testimony that Plaintiffs lost market share or had a decline in sales. SOF, ¶ 31. Crucially, Plaintiffs' financial expert testified that no calculation for losses had been made because "[a]lthough I do understand that one is entitled to obtain actual damages or losses. But for these purposes I have [only] calculated the disgorgement of profits for Lanham Act and FDUPTA." SOF, ¶ 31. Likewise, Plaintiffs' financial expert's report is devoid of any calculation of losses and has only quantified a disgorgement of profits under the Lanham Act. SOF, ¶ 31. Consequently, Plaintiffs have abandoned any injury to sales.

Indeed, Plaintiffs have approximately 480,000 owners/customers. ECF No. 272, ¶ 24. Yet, Diamond only claims that 760 of these customers hired NGT/NGE and, as a result, they suffered injuries. SOF, ¶ 56. Plaintiffs have provided no evidence supporting any damage to market share, including expert opinions or testimony from their corporate representatives on damages. SOF, ¶ 31. Thus, Plaintiffs have abandoned their reputational damages or injuries to their sales to bring a Lanham Act claim. Accordingly, Plaintiffs have no standing to bring a Lanham Act claim.

**b. Plaintiffs Cannot Satisfy The Heightened Proximate Causation Requirement Under the Lanham Act.**

Plaintiffs cannot show that Newton Defendants made actionable representations or that Diamond was injured. However, even if they could prove this, Plaintiffs cannot establish that any such misrepresentations were the proximate cause of Diamond's alleged injury. To satisfy the proximate causation element under the Lanham Act claim, the plaintiff must prove "injury flowing

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, at 133-34 (emphasis added). Further, "the harm alleged must have a sufficiently close connection to the conduct the statute prohibits." *Id*. The proximate causation requirement "reflects the reality that the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing." *Id*. at 132. As we will see in more detail below, the Newton Defendants' advertisement is not false or misleading, the alleged false or misleading advertisement is not actionable under the Lanham Act, and the Newton Defendants did not direct owners to cease paying their timeshare obligations. Thus, Plaintiffs cannot met the heightened proximate cause required under the Lanham Act.

### i. The Newton Defendants' advertisements are not false or misleading.

To succeed under the Lanham Act, plaintiffs have the burden of proving the following elements: (1) the advertisements of the opposing party were false or misleading, (2) the advertisements deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising. *See, e.g., Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc*., 299 F.3d 1242, 1247 (11th Cir. 2002). However, statements of puffery or opinion are not actionable. *See Cavic v. Grand Bahama Dev. Co*., 701 F.2d 879, 883 (11th Cir. 1983). Similar to puffery, other non-actionable opinions involve predictions that do not lend themselves to "empirical verification." *Global TechLed, LLC v. Hilumz Int'l Corp.*, 2017 WL 588669, at *6 (M.D. Fla. 2017). Non-actionable opinions include predictions about the future. *Id*. (statement that competitor was "going out of business" constituted non-verifiable prediction or opinion); *Cavic*, 701 F.2d at 883 (promise of future action or prediction of future events is not a representation, there is no right to rely on it, and it is not false when made).

Plaintiffs have failed to proffer any evidence that the Newton Defendants' advertising was false or misleading, let alone that the statements deceived consumers and effected their purchasing decisions. Even if an advertisements has the capacity to deceive, plaintiffs must establish that the deception was material to any purchasing decisions. Under the materiality element, a plaintiff must establish that "the defendant's deception is likely to influence the purchasing decision." *Johnson & Johnson Vision Care*, 299 F.3d at 1250. "The materiality requirement is based on the premise

that not all deceptions affect consumer decisions." *Id*. For example, Plaintiffs' engaged damages expert John Jarosz to calculate Plaintiffs' profits attributable to the Newton Defendants' alleged misconduct.   However, nothing in Mr. Jarosz's expert report even addresses the Newton Defendants' advertisements or their alleged falsity.   *See generally* John C. Jarosz Expert Report. Similarly, Plaintiffs' retained expert Dr. Bruce Isaacson to survey consumer "impressions" of the Newton Defendants' advertising materials. His report is similarly completely void of any conclusions pertaining to the allegedly "false" or "misleading" nature of the advertisements and whether or not they had any actual impact on consumer purchasing decisions. SOF, ¶ 33.   Even expert Jamie Baldwin's Report, while noting possible statistical correlation between a timeshare owner discontinuing payment and his or her contact with the Newton Defendants, the report drew no conclusions about the veracity of any advertisements. SOF, ¶ 34.

Even Plaintiffs' own expert Bruce Isaacson himself acknowledges that the majority of timeshare owners are not even subject to Newton Defendant advertising materials. SOF, ¶ 33 (noting that Newton Group advertising materials "communicate or imply to *only a small percentage* of timeshare owners that the company would get them out of their timeshare…")(emphasis added). As the record evidence does not support any false or misleading advertisement, Newton Defendants are entitled to summary judgment on this claim.

### ii.   Almost All of the Alleged False and Misleading Statements Constitute Non-Actionable Opinions or Puffery.

Under the Lanham Act, "literally false statements and statements that are literally true, but misleading," are actionable. *Global Tech Led, LLC v. Hilumz Int'l Corp*., 2017 WL 588669, at *6 (M.D. Fla. 2017). However, statements of puffery or opinion are not actionable. *See Cavic v. Grand Bahama Dev. Co*., 701 F.2d 879, 883 (11th Cir. 1983). Puffery is described as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *BellSouth Advert. & Pub. Corp. v. Lambert Pub*., 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999). It involves "outrageous generalized statements, not ... [s]pecific claims that are so exaggerated as to preclude reliance by consumers." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc*., 911 F.2d 242, 246 (9th Cir. 1990) (emphasis added). Similar to puffery, other non-actionable opinions involve predictions that do not lend themselves to "empirical verification." *See Global Tech*, at *6. Non-actionable opinions include predictions about the future. *Id*. (statement that competitor was "going out of business" constituted non-verifiable prediction or opinion); *Cavic v. Grand Bahama Dev.*

*Co.*, 701 F.2d 879, 883 (11th Cir. 1983) (promise of future action or prediction of future events is not a representation, there is no right to rely on it, and it is not false when made); *MDVIP, Inc. v. Beber*, 2017 WL 2364729, at *3 (Fla. 4th DCA 2017) (promise to deliver exceptional product or service is a matter of opinion rather than fact). Qualitative modifiers are not readily subject to empirical verification and consequently non-actionable under the Lanham Act. *See Global Tech*, at *16 (finding statements "be careful" of competitor, and competitor is "going out of business" are non-verifiable and consequently non-actionable).

Here, Plaintiffs' experts' Isaacson and Carlson testified to a list of four item which Plaintiffs contend are false or misleading advertising. SOF, ¶ 29. Specifically, (1) the mailer, (2) homepage of NGT/NGE's webpage, (4) the guarantee from NGT/NGE's webpage, (4) and screenshots from the videos. *Id.*

- **The Mailer.** SOF, ¶¶ 40-44. All of the statements included in the Mailer are either outrageous generalized statements or nonactionable opinions, including statements about future events and star ratings. *See Cavic*, at 883; *Global Tech*, *16. The Mailer provides a star rating—"a rating of 4.97 stars out of 5 with the Better Business Bureau"—which is a simple statement of opinion and not actionable under the Lanham Act. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021) (finding "[t]he comparative five-star ratings in the Guide not actionable [because] they are simply statements of opinion.").

- **Homepage.** SOF, ¶¶ 51, 53. Statements from the website stating "The #1 Trusted Timeshare Exit" and "The #1 Trusted Name in Timeshare Exit" are simply not actionable as they are mere opinion and puffery. *See In re Century 21-Re/MAX Real Estate Advertising Claims Litigation*, 882 F.Supp. 915, (C.D. Ca. 1994) (finding the statement "declared RE/MAX #1 in the United States—and the World" as "mere opinion" as "this sort of statement is classic puffery" and not actionable under the Lanham Act.

- **Guarantee.** SOF, ¶¶ 54-57. The "skin in the game guarantee" is not actionable. *MDVIP, Inc. v. Beber*, 2017 WL 2364729, at *3 (Fla. 4th DCA 2017) (promise to deliver exceptional product or service is a matter of opinion rather than fact).

- **Screenshots.** SOF, ¶ 53. The comments made by Mr. Newton, such as--"a timeshare exit industry expert," and he described the timeshare industry as consisting of "con artists" and "scams," with a "virtually nonexistent" resale market and contracts that "go on into perpetuity," with "never ending fees"—are puffery and not actionable. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) ("product superiority claims that are vague or highly subjective often amount to nonactionable puffery.").

Accordingly, all four alleged false advertising that Plaintiffs' experts' Isaacson and Carlson testified about are not actionable under the Lanham Act.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

### iii. There is No Evidence of Plaintiffs' Sales Being Diverted Because of Newton Group's Advertisement

Plaintiffs' alleged injury is not proximately caused by its advertisements and, therefore, Plaintiffs lack standing under the Lanham Action. In this action, Plaintiffs claim damages for the non-payment of sums due under timeshare contracts by the Newton Groups' clients. *See* ECF No. 272, ¶ 95. However, that is not a sufficient close connection to the conduct the statute prohibits. *Lexmark Int'l, Inc.*, 572 U.S. at 133. Specifically, Plaintiffs must "show[ing] economic or reputational injury *flowing directly from the deception* wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the Plaintiffs. *Id.* Here, Plaintiffs have provided zero evidence that Plaintiffs' sales were being diverted because of the alleged false advertising. Thus, Plaintiffs have failed to establish proximate causation.

The following evidence demonstrates there is no evidence of Plaintiffs' sales being diverted because of Newton Groups' advertisements:

1. None of the Newton Defendants' advertisements direct, instruct, or encourage consumers to stop paying on their mortgages or maintenance fees. SOF, ¶¶ 40-64;
2. None of the advertisements stat anything about Diamond, Diamond Resorts, Diamond Resorts US Collection Development, LLC, or Diamond Resorts US Hawaii Development, LLC. SOF, ¶¶ 40-64;
3. None of the advertisements tell consumers not to purchase more points or timeshare contracts. SOF, ¶¶ 40-64;
4. There is no evidence that is Newton Defendants' advertisements caused consumers to stop purchasing timeshares; SOF, ¶¶ 34-36 and
5. None of the advertisements mention DC Capital. SOF, ¶ 29.

Thus, none of the advertisements at issue direct the consumer to cease making payments nor are the allegedly false or misleading statements intended to induce such an action. *See Orange Lake Country Club, Inc. v. Reed Hein & Assoc., LLC*, 2019 WL 7423517, at *14 (M.D. Fla. Oct. 4, 2019) (granting summary judgment in favor of Defendants as "Plaintiffs has not proven that standing and proximate cause exists to bring a Lanham Act claim" by finding that "Plaintiffs' injuries do not flow directly from the deception attributable to the advertisements" reasoning that "none of the advertisements at issue direct the consumer to cease making payments not are the allegedly false or misleading statements intended to induce such action."); *see also Westgate Resorts, Ltd. v. Reed Hein & Associates, LLC*, 2020 WL 674108, at *2 (M.D. Fla. Feb. 11, 2020) (granting summary judgment in favor of Defendants on Plaintiffs' Lanham Act claim by finding

that "Westgate cannot show that any of the 33 [alleged false] statements directly caused timeshare owners to stop making payments."). Thus, Plaintiffs' injuries do not flow directly from the deception attributable to the advertisements.

### iv.   The Newton Defendants Did Not Direct Owners to Cease Paying Their Timeshare Obligations

Plaintiffs do not meet the proximate causation requirement because the Newton Defendants did not direct owners to stop paying their timeshare obligations. The instant case is similar to *Westgate Resorts, Ltd. v. Reed Hein & Associates, LLC*, 2020 WL 674108 (M.D. Fla. Feb. 11, 2020), timeshare developers sued a "Timeshare Exit Team" in the business of helping timeshare owners get out of their obligations to timeshare businesses for false advertising under the Lanham Act. *See Westgate Resorts, Ltd.*, 2020 WL 674108 at *1. In their complaint, the timeshare developers alleged that the defendants "induce [timeshare owners] to cancel their timeshare interest[s] without any factual or legal basis and stop making payments to Plaintiffs…." *Id*. at *2. In support of their assertion, the timeshare developers identified 33 allegedly false or misleading statements in the defendants advertising and marketing materials. *Id.* Granting summary judgment in favor of the defendant timeshare exit company, the Middle District specifically noted that "none of the 33 statements identified by [the timeshare developers] direct (or can reasonably be construed to direct) timeshare owners to stop making payments." *Id.* (emphasis added). Noting that, under *Lexmark*, a plaintiff suing under the Lanham Act must show "economic or reputation injury flowing ***directly*** from the deception wrought by [allegedly false or misleading] advertising," the Court dismissed the plaintiffs' claim without trial. *See* id. (emphasis added). *See also Club Exploria, LLC v. Austin*, 2020 WL 6585802 (M.D. Fla. Nov. 10, 2020) (granting summary judgment in favor of Defendant by finding "the record evidence does not show that the [timeshare owners] retained [defendant-law firm] because of its [advertising], or that [defendant-law firm] directed the owners to stop making payments to plaintiff[,]")(emphasis added).

Just as the plaintiffs in both *Westgate Resorts, Ltd.* and *Club Exploria, LLC* failed to establish proximate cause to proceed past summary judgment under the Lanham Act, so do the Plaintiffs in this current litigation. Despite their assertions that the Newton Defendants engage in false and misleading advertisements regarding their timeshare exit services, there is no record evidence suggesting that the Newton Defendants direct timeshare owners to stop making payments. On the contrary, deposition testimony clearly indicates that timeshare owners were

already predisposed to stop payment on their timeshare contracts—regardless of whether or not the Newton Defendants ever explicitly advised them to do so.  To be clear, Plaintiffs only deposed seven[3] out of the 760 clients allegedly at issue for Lanham Act claims. SOF, ¶ 56. Those seven individuals each testified that the Newton Group did not direct them to stop making their timeshare payments. SOF, ¶¶ 59, 61, 63, 66, 71, 75, 78. In fact, many of the owners had already decided to stop making payments prior to hiring the Newton Defendants, and they each testified as follows:

1. <u>Jefferson Kline</u> – He stopped making payments because "[his] income level changed." SOF, ¶ 68.

2. <u>Horatio Gonzalez</u> – He testified that he stopped making payments to Diamond before hiring Newton and that the Newton Group never told him to stop making payments. SOF, ¶¶ 69, 70. ("Q. And you stopped making payments to Diamond before you hired Newton Group, is that right? A. Correct. Yes. Q. So, Newton Group didn't tell you to stop making payments, is that right? A. Never did.").

3. <u>Helen Washer</u> - She sought to terminate her timeshare obligation because she could not afford it anymore. SOF, ¶ 71. She also testified that she was "no[t]" "instructed by anyone at either Newton Group or DC Capital to stop making [her] payments to Diamond." SOF, ¶ 72.

4. <u>Roger Fladaboe</u> – He and his wife stopped making payments to Diamond because they were misled by Diamond as to the amount and terms of payments. SOF, ¶ 74. He also testified that he was never "told that [he] needed to stop making the maintenance fee and mortgage payments so that DC Capital or the Newton Group could do anything for [him] to achieve an exit from [his] timeshare interest with Diamond Resorts." SOF, ¶ 75.

5. <u>Stephanie Tone</u> – She and her husband stopped making payments before hiring the Newton Defendants because they were not going to keep their timeshare obligation. SOF, ¶ 79. She testified that no one at "the Newton Group" advised her "to stop making payments on [her] timeshare." SOF, ¶ 80.

6. <u>Milton Rebbert</u> – He stopped paying on his Diamond timeshare obligation because he wanted out of his timeshare obligation. SOF, ¶ 84. He testified that he was never "advised by the Newton Group to stop making payments on his Diamond timeshare." SOF, ¶ 84.

7. <u>Diane Reeve</u> – She and her husband sought termination of their timeshare since 2000 and before they hired the Newton Defendants. SOF, ¶ 86. She testified that the Newton Group did not advise her to stop making her timeshare payments. SOF, ¶ 88.

---

[3] These clients are Jefferson Kline, Horatio Gonzalez, Helen Washer, Roger Fladaboe, Stephanie Tone, Milton Rebbert, and Diane Reeve. SOF, ¶ 65.

All of the seven witnesses testified that the Newton Defendants did not advise them to stop making payments on their timeshares. Plaintiffs have not produced a single witness that may have been advised by the Newton Group to stop payments on their timeshare obligations, because the Newton Group does not advise clients to stop payments on their timeshares. SOF, ¶¶ 69, 70, 72, 75, 80, 84, 88. Nowhere in the advertisements at issue did the Newton Defendants suggest or imply that timeshare owners should stop making any payments. SOF, ¶ 29. Further, none of the Newton Defendants' advertisements, discuss or otherwise identify Diamond or any timeshare company. *Id.* Instead, as an example, the mailer simply contains language that may affect "owners" of a "timeshare." SOF, ¶ 41. Importantly, the Court in *Lexmark* also noted that "a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation." *Lexmark*, at 136 (emphasis added). "The harm alleged must have a sufficiently close connection to the conduct the statute prohibits." *Id.* at 133 (emphasis added). As the court noted in *SnacLite, LLC v. Nuts'N More, LLC*, 2016 WL 6778268, at *10 (N.D. Ala. Nov. 16, 2016), under Lanham Act false advertising cases, "there is a heightened risk associated with causation testimony that ignores the competitive market as a whole." *Id.*, at *10. Thus, standing based upon proximate causation is more difficult where the defendant does not "*specifically target a competing product, plaintiff may only be one of many competitors, and without proof of causation and specific injury each competitor might receive a windfall unrelated to its damage.*" *Id.* (emphasis added); 3M *Innovative Properties Co. v. Dupont Dow Elastomers LLC*, 361 F.Supp.2d 958, 972 (D. Minn. 2005) (emphasis added). Here, based on the above discussion, Plaintiffs have not met the heightened risk to prove proximate cause as required by the Lanham Act.

As there is no genuine issue of material fact regarding whether or not the Newton Defendants proximately caused timeshare owners to cancel their payments to Plaintiffs, Newton Defendants are entitled to summary judgment on this claim.

## V.  PLAINTIFFS ATTEMPT TO OBTAIN DISGORGEMENT UNDER THE LANHAM ACT FAILS

Plaintiffs also fail to demonstrate entitlement to monetary recovery under the Lanham Act– in the form of disgorgement of the Newton Defendants' revenues.[4] Under the Act, "a higher

---

[4] Plaintiffs also seek injunctive relief. However, it is well-settled that in order to obtain injunctive relief under the Lanham Act, plaintiffs must prove, among other things, that they have suffered an irreparable injury. *See, e.g., Angel Flight of Ga., Inc. v. Angel Flight of Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

standard of proof is required to recover damages" than simply to obtain injunctive relief," and "[i]f plaintiff seeks damages based upon its own lost sales or upon defendant's profits, plaintiff is faced with the traditional problems of proving an actual diversion of customers from itself to defendant." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:42 at 27-104 (4th ed. 2013); *see Trilink Saw Chain, LLC v. Blount, Inc*., 583 F. Supp. 1293, 1320 (N.D. Ga. 2008) ("[W]hereas a showing that the defendant's activities are likely to cause confusion or to deceive customers is sufficient to warrant injunctive relief, a plaintiff seeking damages must show actual harm to its business.") (internal quotation omitted). "[W]here a plaintiff who has brought a Lanham Act claim for false advertising has failed to present evidence that the defendant benefited from the alleged false advertising, the plaintiff *will not be permitted* to recover any of the defendant's profits." *Retractable Tech., Inc. v. Becton Dickinson & Co*., 919 F.3d 869, 876 (5th Cir. 2019).

    **a.** **Plaintiffs Do Not Attempt to Demonstrate Any Damages Resulting From the Alleged False Advertising**

    Plaintiffs' failure to link any damages to the alleged false advertising by the Newton Defendants, but rather only to attempt, through Ms. Baldwin[5], to link damage to the Newton Defendants' conduct (based on an statistical payment behavior analysis), is fatal to their attempt to obtain damages recovery under the Lanham Act. A challenger seeking to establish false advertising under the Lanham Act is required to demonstrate that "it has been, or likely will be, injured as a result of the false or misleading statement[s]." *Sovereign Military Hospitaller Order*, 702 F.3d at 1294 (emphasis added); *see Air Turbine Tech., Inc. v. Atlas Copco AB*, 295 F. Supp. 2d 1334, 1344 (S.D. Fla. 2003) (noting the "element of a Lanham Act false advertising claim . . . that the false advertising caused injury to plaintiff" and stressing the importance of "evidence that consumers linked the false advertising to their decision not to purchase [plaintiff's] product"). In seeking damages, "[t]o make this showing, the plaintiff must demonstrate that the false advertisement *actually deceived or misled consumers*, which in turn caused injury to the plaintiff." *Trilink*, 583 F. Supp. 2d at 1320. That is, a plaintiff seeking damages must do more than simply show that a false or misleading message was disseminated; it must show how it has been

---

For reasons set forth above, Plaintiffs simply cannot establish an irreparable injury. Thus, their claim for injunctive relief also fails.
[5] A Daubert motion is being filed contemporaneously with this Motion to exclude Ms. Baldwin's expert report and testimony as unreliable.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

detrimentally affected by that message. *See CKE Rest. v. Jack in the Box, Inc.*, 494 F. Supp. 2d 1139, 1146 (C.D. Cal. 2007) ("The injury in cases involving non-comparative statements 'accrue[ ] equally to all competitors.... Thus [courts] require[ ] some indication of *actual injury and causation* to satisfy Lanham Act standing requirements and to ensure a plaintiff's injury was not speculative.'") (Emphasis added).

It is worth noting that the Newton Defendants did not instruct consumers to stop making payments on their timeshare obligations.[6] Moreover, Plaintiffs have not even attempted to meet their burden of establishing damages causation for alleged false advertising. Ms. Baldwin conceded that her damages analysis concerned only payment behavior analysis and not the impact of the alleged false advertising. SOF, ¶¶ 34, 35 ("Q. So are you aware of any Newton advertising that told consumers to stop paying on their timeshare contract? A. I'm not aware or the other. Q. Okay. Are you aware of any Newton advertising that instructed any DC Capital client to stop paying on their timeshare contract? A. I'm not aware of it one way or the other and I don't think it's relevant."). Additionally, Plaintiffs' financial expert simply "assumed that the alleged misconduct has occurred" and simply quantifies the alleged disgorgement of profits without a scintilla of evidence that the alleged false advertisement *actually* deceived or misled consumers. *Id*. Lastly, Mr. Isaacson provided a survey as to how people react to the advertisement at issue, but the survey did not provide any link between the alleged false advertisement and the alleged owners decision to stop payment on their Diamond timeshare obligation. *Id*.

### b. Plaintiffs Cannot Demonstrate a Potential Entitlement to Disgorgement

The Lanham Act permits the Court, "in its discretion," to disgorge a defendant's profits in a "just" amount. 15 U.S.C. § 1117(a). The statute specifies that disgorgement must "constitute compensation and not a penalty." *Id*.

In this case, involving allegedly false and misleading non-comparative advertising, Plaintiffs may not obtain disgorgement without *proving causation*. *SnacLite, LLC*, 2016 WL 6778268, at *10 (finding that under Lanham Act false advertising cases, "there is a heightened risk associated with causation testimony that ignores the competitive market as a whole.") The burden-shifting language in Section 1117(a) that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed,"

---

[6] *See supra* Section IV(b)(iii).

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

does not relieve Plaintiffs of the requirement that it demonstrate injury caused by false advertising. 15 U.S.C. § 1117(a). Circuits that have addressed whether, in a non-comparative advertising case, a plaintiff must show causation or instead may simply rely on the burden-shifting standard available in trademark infringement cases (the Eleventh Circuit has not yet addressed this) have held uniformly that a plaintiff must establish proof of causation to qualify for possible disgorgement. *See TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820, 831 (9th Cir. 2011) (denying damages where plaintiff failed to produce any proof of past injury or causation; the standard that applies to comparative advertising cases regarding causation is not relevant in non-comparative advertising cases); *Logan v. Burgers Ozark Country Cured Hams Inc*., 263 F.3d 447, 465 (5th Cir. 2001) ("[W]here a plaintiff who has brought a Lanham Act claim for false advertising has failed to present evidence that the defendant benefitted from the alleged false advertising, the plaintiff will not be permitted to recover any of the defendant's profits under 15 U.S.C. §1117(a)").

Because, as shown, Plaintiffs have not even attempted to demonstrate causation of any injury with respect to alleged false advertising by the Newton Defendants, they cannot meet their burden of demonstrating a possible entitlement to disgorgement under the Lanham Act.

## VI.   NEWTON DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM

Throughout the course of this litigation, Plaintiffs have alleged that the Newton Defendants tortiously interfered with existing contracts between Plaintiffs and timeshare owners.  *See* ECF No. 272, ¶¶ 136-146.  Under Florida law, to succeed on a cause of action for tortious interference with contract, a plaintiff must prove (1) the existence of a contract; (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach.  *United States Life Ins. Co. in the City of New York v. Logus Mfg. Corp.*, 845 F. Supp. 2d 1303, 1320 (S.D. Fla. 2012).  Importantly, "[w]here [a] [third-party] already intend[s] to breach [his or her] contract with [the] plaintiff before contacting [defendant], [defendant is] entitled to summary judgment on [the] tortious interference claim." *Westgate Resorts, Ltd. v. Reed Hein & Associates, LLC,* 2020 WL 674108 at *3 (M.D. Fla. Feb. 11, 2020).  "To be liable for tortious interference, the offending party's interference must be both direct and intentional." *Romika-USA, Inc. v. H SBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1340 (S.D. Fla. 2007) (internal quotation marks omitted) (citation

omitted); *see also Ethyl Corp. v. Balter*, 386 So.2d 1220, 1223 (Fla. 3d DCA 1980) ("direct interference ... is indispensable to the existence of an actionable wrong" for tortious interference).

The Middle District has granted summary judgment in favor of the defendants where "there [was] no evidence that [the defendant]…caused the [timeshare] owners to believe that they no longer needed to make payments." *Club Exploria, LLC*, at *5. *Club Exploria, LLC* involved a company that specialized in selling timeshare interests suing a law firm for its representation of the timeshare owners. *Id*. In addition to seeking damages under the Lanham Act, plaintiff *Club Exploria, LLC* also sought relief under a theory of tortious interference with contract. *Id.* Granting summary judgment in favor of the defendants on the tortious interference count, the Court specifically noted that "[t]he fact that [timeshare owners] stopped paying after hiring [defendant] is not enough to convince a reasonable jury that [defendant] intentionally caused the [timeshare owners] to breach their contracts." *Id.* (emphasis added).

Similarly, in *Westgate Resorts, Ltd. v. Sussman*, 2019 WL 3848805 (M.D. Fla. July 26, 2019)("*Sussman I*"), the Middle District rejected statistical correlation between a timeshare developers receipt of a letter of representation and the subsequent cancelling of payments from timeshare owners as sufficient evidence to prove causation on a tortious interference claim. Explaining that "[p]laintiffs' continued reliance on the 'temporal proximity' of owners stopping payments around the time a letter of representation" is sent amounts to "correlation, not causation," *Sussman I*, at *2, fn. 3, and that "[i]n no circumstances will the Court allow [such a case] to proceed to a jury when it hangs on such loose evidentiary threads…." *Id*. at *2 (emphasis added).

Exactly like the facts in *Club Exploria, LLC*, and *Sussman I*, here, Plaintiffs fail to proffer any evidence that the Newton Defendants in any way caused timeshare owners to cancel or withhold payments on their timeshare contracts. For example, in expert Jarosz's report, Mr. Jarosz himself admits that "Diamond Owners…would have defaulted even in the absence of [the Newton Defendants' alleged misconduct]." SOF, ¶ 33. In support of this admission, expert Jarosz cites to Plaintiffs' statistics expert, Jamie Baldwin. *Id*. Ms. Baldwin's Report too is void of any discussion of a causal relationship between timeshare owner's cancellation of payments and their interaction with the Newton Defendants. SOF, ¶ 33 (noting that her expert report is merely "measure[ing] the association between two events."). As multiple case authorities in U.S. District Courts in Florida specifically reject such loose evidentiary support to withstand a motion for summary judgment,

CASE NO.: 9:18-CV-80311-BER

Newton Defendants are entitled to summary judgment on Plaintiffs' tortious interference claim. *See also  Westgate Resorts, Ltd. v. Reed Hein & Associates, LLC*, 2020 WL 674108 at *3 (noting that where "clients were predisposed to breach their timeshare contracts before hiring [defendants]…this would defeat [plaintiff's] claim [of tortious interference]."(emphasis added).

Moreover as explained in section IV(b)(iii) above, timeshare owners had a predisposition to breach their timeshare obligations even before hiring the Newton Defendants. Under Florida law, a party's "predisposition to breach" precludes any finding that it was induced to breach by a third party. *See Ingenuity, Inc. v. Linshell Innovations, Ltd*., 644 Fed. Appx. 913, 916 (11th Cir. 2016). Consequently, Plaintiffs have failed to provide any evidence for causation to show that the direct interference by the Newton Defendants caused the breach of contracts.

Importantly, to the extent Plaintiffs can proffer evidence of causation on any of its counts, such evidence should be restricted solely to the specific, individual owners directly providing such evidence. In *Westgate Resort, Ltd. v. Sussman*, 2019 WL 3836534 (M.D. Fla. Aug. 15, 2019)("*Sussman II*"), plaintiff-timeshare developer was attempting to recover damages from the defendant for the 175 owners that allegedly stopped payment on their timeshare contracts. *See* id. at *1. Noting that plaintiff's allegations were essentially "175 separate claims…and 175 sets of circumstances surrounding each owner's nonpayment," the Middle District specifically rejected extrapolating damages based on the testimony of five owners:

> [The plaintiffs] want me to infer that all the damages from the breach are all the profits that [defendants] made….*And I think I would have to make a leap of faith there…. since [the timeshare developer] missed the boat on establishing causation for the 175 outstanding* owners… their [] evidence doesn't speak to [the majority of] owners'…nonpayments….

*Id*. at *2-3.The Court further explained:

> Plaintiffs' strategy in this case (using exemplars to extrapolate damages…) hasn't borne fruit….Where the rubber hits the road is when a party tries to squeeze [voluminous] distinct claims based on separate contracts and individual circumstances into one case and leave out evidence from 97%...of [the] owners.

*Id.* at *4-5. (emphasis added). Should Plaintiffs be able to proffer evidence purporting to show causation for a limited number of timeshare owners, the Court should still enter summary judgment in favor of the Newton Defendants on the vast majority of Plaintiffs' claims. *See also Sussman I* at *2 (noting that "even [if a] very small sample of owners" demonstrate causation, "the Court will

18

not allow Plaintiffs to dub these owners 'exemplar' and extrapolate these owners' experiences with Defendants to every owner who stopped paying…"). Additionally, this Court should not rely on Dr. Baldwin's report or testimony as her opinions are unreliable as the data used is nothing more than extrapolated "causal inference," assumptions, and her guesswork based on her data.[7] In order to prevail on a tortious interference claim, the plaintiff must provide direct evidence of the interference, not circumstantial evidence. *See Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc.*, 779 So.2d 554, 558 (Fla. 5th DCA 2001).

However, discovery is now closed, and Plaintiffs have not produced a single witness to support their position that the Newton Defendants interfered with thee 242 contracts at issue. SOF, ¶ 61. Accordingly, the Newton Defendants are entitled to summary judgment on Plaintiffs' tortious interference claim.

## VII. NEWTON DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CONSPIRACY CLAIM

Finally, to adequately prove a cause of action for civil conspiracy in Florida, a plaintiff must prove a) an agreement between two or more parties, b) to do an unlawful act by unlawful means, c) the committing of an overt act in pursuance of the conspiracy and d) damage to the plaintiff as a result of the act. *See, e.g., Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). Generally, an actionable conspiracy requires an actionable underlying tort or wrong. *Id. See also Kent v. Kent*, 431 So. 2d 279, 281 (Fla. 5th DCA 1983)(holding that "ordinarily there can be no independent tort for conspiracy")(emphasis added)*; Wright v. Yurko*, 446 So. 2d 1162, 1165 (Fla. 5th DCA 1984)(noting "[a]n act which does not constitute a basis for a cause of action…cannot be made the basis for…conspiracy")(emphasis added); *Buchanan v. Miami Herald Pub. Co.*, 230 So. 2d 9, 12 (Fla. 1969)(holding that "the District Court was…correct in holding that…conspiracy to commit malicious prosecution failed" since the underlying count of malicious prosecution failed); *Abromats v. Abromats*, No. 16-cv-60653-BLOOM/Valle, 2016 WL 4917153 at *5 (S.D. Fla. 2016)(holding that "because the Court dismiss[ed] the underlying tort actions, [the conspiracy count] is dismissed with prejudice as well")(emphasis added); *Hercules Capital, Inc. v. Gittleman*, No. 16-cv-81663-MIDDLEBROOKS, 2018 WL 395489 at *24 (S.D. Fla.

---

[7] A Daubert Motion to Exclude Dr. Balwin is being filed concurrently to this Motion. *See*, Baldwin's Daubert Motion, at 5. Similarly, Daubert Motions to exclude all of Plaintiffs' Experts are being filed concurrently with this Motion.

2018)(holding that since defendant was not liable for the underlying torts, "there is no underlying 'unlawful act'…on which to base a civil conspiracy claim")(emphasis added).

In their Third Amended Complaint, Plaintiffs allege that the Newton Defendants conspired to interfere with their existing and future contractual relations.  *See* ECF No. 272, ¶¶ 147-159. However, as described in detail above, Plaintiffs have failed to prove any of their claims regarding alleged violations of the Lanham Act, tortious interference with contractual relations, or violations of FDUTPA.  As Plaintiffs cannot prove an underlying tort on which to base their conspiracy claim, Newton Defendants are entitled to summary judgment on the civil conspiracy claim.

## VIII.   PLAINTIFFS' CLAIMS OF TORTIOUS INTERFERENCE AND CONSPIRACY ARE BARRED BECAUSE THE NEWTON DEFENDANTS ARE AGENTS OF THE OWNERS THUS ARE JUSTIFIED IN THEIR ACTIONS TO ASSIST OWNERS

The Newton Defendants' actions are justified/privilege to assist owners to avoid their unwanted and unaffordable timeshare obligations, thus the Newton Defendants are entitled to summary judgment on their twentieth affirmative defense of justification/privilege. *See Wyndham Vacation Ownership, Inc. v. Miller*, 2019 WL 5394074, at *6 (M.D. Fla. Oct. 11, 2019) ("the legal justification or privilege to interfere with a contract is an affirmative defense.") (Emphasis added). When a defendant moves for summary judgment on an affirmative defense, the defendant "has the burden of showing beyond peradventure all of the essential elements of the . . . defense to warrant judgment in [its] favor." *Miller v. Gizmodo Media Grp., LLC*, 407 F. Supp. 3d 1300, 1307 (S.D. Fla. 2019) (*quoting Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986)). To prevail on such a motion, the defendant "must produce[] credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Ortega v. Bel Fuse, Inc.*, No. 15-21229-CIV, 2016 WL 1588393, at *6 (S.D. Fla. Apr. 20, 2016).

Here, the Newton Defendants are agents of the owners via the durable Power of Attorney ("POA") that is signed and notarized by the owners. SOF, ¶¶ 51, 52. After the customers would return a notarized POA, Newton Exit would look for options to transfer or cancel owner's timeshare contracts, and when that option was not feasible, they would hire a law firm to represent the owners on their behalf. SOF, ¶ 5. When an agency relationship is established, the "agent generally cannot be held liable for tortiously interfering with the contract of its principle because the agent is privileged to act in the best interest of the principle." *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co*., 527 F.Supp. 2d 1355, 1367-68 (M.D. Fla. 2007).

Plaintiffs may argue that the Newton Defendants are not afforded this privilege because they acted with ulterior purposes. *See Rudnick v. Sears, Roebuck & Co.*, 358 F.Supp. 2d 1201, 1206 (S.D. Fla. 2005) ("The privilege is divested when the defendant acts solely with ulterior purposes and the advice is not in the principal's best interest."). Yet, the evidence and testimony shows that the Newton Defendants acted at all times in the owner's best interest to aid the owners in successfully ending their timeshare obligations. SOF, ¶¶ 1, 3, 6, 11, 13, 19, 60, 63-64, 67, 73. In fact, the opposite is true from Diamond who "lured" owners to purchase more points and refuse to terminate timeshare contracts. SOF, ¶¶ 57, 63. At all times, the Newton Defendants main and sole purpose was to assist the owners to exit their contracts "successfully and legally." SOF, ¶ 6. Here, the owners felt safer with the services provided by the Newton Defendants and are satisfied with the results. SOF, ¶¶ 64, 67, 73, 74, 76, 79. Notably, the Newton Defendants did not advise or advertise for owners to stop making payment on their timeshare contracts. SOF, ¶ 59, 60, 63, 66, 71, 75. Instead, the Newton Defendants worked and investigated each case to provide the best avenue to aid owners to legally exit their timeshare contracts. SOF, ¶ 6. *Cf. Westgate Resorts, Ltd. v. Castle Law Group, P.C.*, 2017 WL 6512552, at *3 (M.D. Fla. Dec. 20, 2017) (noting that where "recommendations for breach were made for purely selfish and mercenary reasons as to earn and retain a large pre-paid retainer rather than to aid the Westgate Owners in successfully ending their contracts with the Plaintiffs" may show that Plaintiffs acted with ulterior motive.). As explained in this section, there is simply no evidence of any ulterior motive by the Newton Defendants as they were properly aiding the owners to successfully and legally end their timeshare contracts.

Accordingly, the Newton Defendants actions were privileged and justified as agents of the owners and are entitled to summary judgment on their twentieth affirmative defense of justification/privilege.

## IX.  CONCLUSION

**WHEREFORE**, based upon the foregoing, the Newton Defendants respectfully moves this Honorable Court for an order granting summary judgment on all claims set forth in Plaintiffs' Third Amended Complaint.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

CASE NO.: 9:18-CV-80311-BER

Dated: September 23, 2021                    Respectfully submitted,

/s/ *Lizza C. Constantine*
JONATHAN VINE
Florida Bar No.:  10966
SHEENA D. SMITH
Florida Bar No.:  118919
LIZZA C. CONSTANTINE
Florida Bar No.:  1002945
COLE, SCOTT & KISSANE, P.A.
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, FL 33401
Telephone: (561) 383-9203
Fax: (561) 683-8977
Email: jonathan.vine@csklegal.com
Email: sheena.smith@csklegal.com
*Counsel for Newton Group Transfers, LLC, The*
*Newton Group, ESA LLC, Interval Broker Direct,*
*LLC, and Newton Group Exit, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of September 2021, the foregoing was served via email to parties identified on the below Service List.

/s/ *Lizza C. Constantine*
Lizza C. Constantine

## SERVICE LIST

Brandon Crossland, Esq.
Julie Brady, Esq.
Catherine E. Woltering, Esq. *(Pro Hac Vice)*
**BAKER & HOSTETLER LLP**
200 S Orange Ave #2300
P.O. Box 112
Orlando, FL 32802-0112
bcrossland@bakerlaw.com
jsingerbrady@bakerlaw.com
cwoltering@bakerlaw.com
*Counsel for Diamond Resorts U.S.*
*Collection Development, LLC and*

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

*Diamond Resorts Hawaii*
*Collection Development, LLC*

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX